# UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

## NOTICE OF INTENT TO APPEAL AND EMERGENCY MOTION FOR IMMEDIATE RELIEF

**JUSTIN RIDDLE,**
 *Plaintiff-Appellant*

**v.**

**X CORP.,**
 *Defendant-Appellee*

**Case No.: [APPEAL NUMBER TBD]**
 **District Court No.:  1-25-CV-00073-ADA**

---

## WHAT THIS CASE IS REALLY ABOUT

**Before addressing legal precedents or procedural requirements, this Court must understand what is actually happening here:**

**Imagine you are a citizen who does everything right.**

**You wake up one morning and discover someone is using your full name, your photographs, your biographical information, your links - impersonating you online. They're attacking people under your name. They're trying to provoke confrontations with strangers who might live near you. They're deliberately making it appear you hold political views opposite to your actual beliefs. They're coordinating with others to get you suspended from the platform.**

**What would you do?**

**Most people would report it through the company's app. You do - it doesn't work.**

**Most people would file formal complaints. You do - the company ignores them.**

**Some people would hire a lawyer. You try - no attorney will take cases against institutional heavy hitters when the implications are this large.**

**So you do what virtually no one else would have the knowledge or persistence to do:**

**You obtain federal copyright registration to make your ownership legally bulletproof. You file FOUR separate DMCA takedown notices under penalty of perjury. You document everything systematically. You file a federal lawsuit with comprehensive evidence.**

**And then you watch as:**

**The company responds twice: "That's impersonation, not copyright. Use the app." (The app that doesn't work.)**

**The company responds twice more: "You just don't understand what copyright is." (Despite your federal registration proving you do.)**

**The harassment continues. New accounts appear using additional images of you. The pattern escalates.**

**And then you discover something worse:**

**The company's own employees are involved. Accounts with verified "affiliated with X" employee badges are part of the harassment. When you identify them in court filings, those identifications get systematically erased from the company's backend systems in three stages over two weeks. The evidence destruction is surgical, targeted, and requires administrator-level database access.**

**You document this destruction in real-time. Screenshots. Timestamps. The full pattern.**

**You file spoliation motions immediately. You follow every rule. You present mathematical impossibilities in the company's billing that prove systematic fraud. You provide evidence that would be conclusive in any neutral forum.**

**And then the judge:**

**Sits on your case for seven months while the harassment continues.**

**Finally rules your copyright claim is "plausible."**

**Takes no action to stop the ongoing harm.**

**Eventually dismisses your entire case for your "tone and using enough words to convey the issues"**

**Now imagine this isn't your first encounter with institutional lying:**

Ten years ago, a bank changed a document to falsely claim you owed child support - preventing you from getting a mortgage. You caught them. You had proof. You filed lawsuits.

State court dismissed. Federal court dismissed. Nebraska Court of Appeals dismissed. 8th Circuit dismissed with one-sentence affirmance.

Everyone - the bank, state regulators, federal banking authorities, multiple courts - protected the lie.

Until you got to the Nebraska Supreme Court with 150 law students watching in a public hearing. Only then - with witnesses who would see the corruption - did you win unanimously.

Then a school district violated your First Amendment rights. The Attorney General published an advisory opinion with two contradictory statements on the same page - one saying your mother was allowed to speak, one saying she wasn't. The contradiction proves at least one statement is false. Courts dismissed without addressing it.

Now a federal judge ignores your copyright case, allows evidence destruction, accepts the company's contradictory pleadings, and dismisses you for "tone."

This Court must ask:

What "tone" is appropriate when you follow every rule, every law, obtain federal copyright registration, file proper DMCA notices, document systematic abuse, and watch as:

- A bank changes documents and everyone lies
- An Attorney General publishes contradictory statements and courts ignore it
- A company's employees harass you and the company destroys the evidence
- Every institution protects every other institution
- And courts dismiss you for documenting it too thoroughly

The pattern is unmistakable: When you're right, when you have proof, when you follow every rule - institutions protect each other and punish you for not giving up.

What makes this case extraordinary is that Appellant survived with the evidence.

Most victims don't have the documentation skills, the legal knowledge, or the neurological inability to accept logical contradictions that drove Appellant to preserve everything in real-time. Most victims give up after the second or third dismissal. Most victims can't afford ten years of litigation. Most victims don't win at a state supreme court level, proving they understand the law.

This Court now holds the evidence that every previous court refused to see.

The question is simple: Will this Court look at the photographs, the mathematical impossibilities, the documented evidence destruction, and the pattern of institutional protection?

Or will this Court find a procedural reason to avoid seeing what cannot be unseen?

---

# PRECEDENTS AT RISK IF THIS COURT AFFIRMS

Before addressing the emergency motions, this Court must understand what precedents would be established by affirmance. Any future attorney could cite this case to justify:

**1. FRCP 37(e) Spoliation Sanctions Are Optional**

- **Evidence destruction during litigation can be declared "moot" by completing it before the court rules**
- **Defendants need only destroy evidence quickly to avoid sanctions**
- **The mandatory language of Rule 37(e) becomes advisory**

**2. Contributory Infringement Requires No Direct Infringement**

- **Supreme Court precedent (*Sony*, *Grokster*) requiring direct infringement can be ignored**
- **Contributory infringement becomes a standalone claim contradicting decades of settled law**

**3. Federal Copyright Registration Is Insufficient Proof**

- **The gold standard of copyright proof can be dismissed for "tone"**
- **Registration certificates provide no meaningful protection**

**4. Defendants May Claim Both Knowledge and Ignorance Simultaneously**

- **Parties can demonstrate comprehensive operational knowledge in motions to dismiss**
- **Same parties can claim total operational ignorance in answers to complaints**
- **Courts need not require logical consistency in pleading positions**

**5. Mathematical Impossibilities Need Not Be Addressed**

- **Cumulative metrics can decrease over time**
- **Percentages can exceed 100%**
- **Courts may dismiss mathematical proof as "plaintiff's conduct" without substantive review**

**6. Page Limits Trump Mandatory Rules**

- **Local rules on page limits override mandatory Federal Rules of Civil Procedure**
- **Judges may refuse to read evidence rather than allow necessary pages to understand complex fraud**
- **"Too complicated to understand" becomes valid basis for dismissal**

**7. ADA Accommodation Does Not Apply to Court Procedures**

- **Procedural contradictions that create neurological barriers for disabled litigants are acceptable**
- **Courts need not provide logical consistency as reasonable accommodation**
- **Disability-based barriers to court access face no remedies**

**8. Judges May Ignore Mandatory Rules Without Consequence**

- **Federal judges can disregard FRCP 37(e), Supreme Court precedent, and Rule 11**
- **No level of judicial misconduct results in accountability**
- **Criminal defendants and civil litigants have no recourse when judges ignore mandatory protections**

**If this Court affirms through one-sentence order without addressing these issues, every future defendant and every future court will cite this precedent to justify identical conduct.**

---

# TO THE HONORABLE JUDGES OF THE FIFTH CIRCUIT:

**This is not yet Appellant's opening brief. This is a Notice of Intent to Appeal accompanied by emergency requests for immediate relief that cannot await standard appellate briefing schedules.**

**The question this Court must answer is simple:**

**Can federal judges see photographs?**

**But before that question can be reached, this Court must address three emergency requests requiring immediate relief.**

---

# I. THREE EMERGENCY REQUESTS REQUIRING IMMEDIATE RULING

## A. Emergency ADA Accommodation (Statutory Duty - Non-Discretionary)

**Request: Order requiring logical consistency in procedural requirements during appellate proceedings.**

**Legal Basis: Americans with Disabilities Act, 42 U.S.C. § 12132 (Title II - public services)**

**Disability: Long-documented ADHD requiring accommodation for logical consistency in rule application**

**Harm: Ongoing daily cognitive damage from procedurally contradictory requirements**

### Why This Requires Emergency Relief:

**Each day these procedural contradictions remain enforceable constitutes ongoing discrimination. The cognitive damage compounds daily. Traditional appellate timelines (6-12 months) mean hundreds of days of continued harm while procedural impossibilities remain in force.**

### The District Court Pattern:

**The district court created and enforced logically contradictory procedural requirements that specifically target cognitive processing disabilities. These contradictions existed from the very beginning of the litigation and persisted throughout.**

**Contradiction 1: The Knowledge Requirement**

- **Motion to Dismiss: X Corp demonstrates comprehensive operational knowledge of DMCA procedures, billing systems, Terms of Service, platform functions**
- **Answer: Same defendant claims "lacks knowledge or information sufficient to admit or deny" 47+ times regarding identical operational matters**
- **Court's enforcement: Accepted both positions simultaneously without requiring explanation**

**Contradiction 2: The Evidence Standard**

- **Defendant may claim operational ignorance as affirmative defense**

- **Plaintiff may not present evidence of operational capability without being sanctioned for "excessive filings"**
- **Court's enforcement: Struck evidence submissions while accepting defendant's claimed ignorance**

**Contradiction 3: The Spoliation Timeline**

- **Evidence destroyed October 13-17, 2025 (11 days after identification in court filings)**
- **Spoliation motion filed October 17, 2025 with real-time documentation**
- **Court ruling October 27, 2025: Declared spoliation "moot" because destruction already occurred**
- **Court's enforcement: Evidence destruction becomes self-mooting by being completed before court addresses it**

## The Critical Distinction: Appellant Follows Procedure Correctly

**This Court must understand a crucial reality that gets obscured by judicial rhetoric:**

**When courts criticize Appellant's "conduct" or "tone," they create the false impression that Appellant is not following proper procedure. This is demonstrably false.**

**Appellant has followed every applicable rule correctly:**

- **Filed complaints with proper jurisdiction and venue**
- **Provided federal copyright registration (the gold standard of proof)**
- **Submitted evidence within filing deadlines**
- **Documented spoliation in real-time as it occurred**
- **Filed motions with proper notice and service**
- **Appealed within applicable timeframes**

**What courts characterize as "improper conduct" is actually:**

- **Documenting evidence destruction as it happens (proper preservation)**
- **Filing supplements when new evidence emerges (proper supplementation)**
- **Pointing out false statements by opposing counsel (proper advocacy)**
- **Requesting enforcement of mandatory rules like FRCP 37(e) (proper procedure)**

**The courts are not saying Appellant violated procedure and should have followed different procedure.**

**The courts are changing procedure and then claiming Appellant violated the newly invented rules.**

**Examples of Procedure Being Changed Mid-Stream:**

1. **Page Limits:** District court struck filings for exceeding 20-page limit despite judge's duty to allow necessary pages to understand complex fraud
2. **Verification Requirements:** Court demanded "verified petition" without stating what verification was missing
3. **Evidence Submission:** Court characterized comprehensive documentation as "excessive" when Federal Rules explicitly permit supplementation
4. **Spoliation Timing:** Court declared spoliation "moot" for being completed - making FRCP 37(e) unenforceable by definition

**The Pattern:**

1. Appellant follows established procedure correctly
2. Court invents new requirement or reinterprets existing rule
3. Court criticizes Appellant for not following the newly invented procedure
4. Court characterizes this as Appellant's "conduct" problem rather than court's procedural manipulation

This is not a case where Appellant doesn't understand procedure.

This is a case where courts refuse to apply their own procedures consistently.

And for someone with ADHD requiring logical consistency, having courts simultaneously claim procedure matters while ignoring their own procedures creates an insurmountable neurological barrier.

## The Accommodation Required:

Defendants cannot claim operational ignorance of their own systems as affirmative defense while simultaneously demonstrating operational knowledge to attack plaintiff's claims. Either they know how their systems operate or they don't. The court must require consistent positions.

## The Binary Choice:

Either the ADA requires reasonable accommodation for cognitive processing disabilities, or it doesn't apply when defendants find contradictory pleading positions strategically useful.

---

# B. Immediate Preliminary Injunction (Plausible Claim Already Found)

**Request:** Order requiring immediate removal of copyrighted image from X Corp's platform and preservation of all evidence pending appeal.

**Legal Basis:** Copyright Act, 17 U.S.C. § 501; FRCP 65

## Why This Requires Emergency Relief:

**1. The District Court Already Found Contributory Infringement Plausible**

District court's own order (Dkt. 66, p. 8): *"Assuming Riddle's allegations are true... X Corp.'s conduct could plausibly constitute contributory infringement."*

**Translation:** The court found a valid copyright claim exists. The only question is whether it's proven.

**2. The Harm Analysis is Binary**

**Harm to Appellant from continued infringement:**

- **Daily ongoing copyright violation**
- **Harassment continues via impersonation accounts**
- **Professional reputation damage compounds**
- **Loss of commercial value of copyrighted work**
- **Cognitive harm from watching violations continue unpunished**

**"Harm" to X Corp from removing one image:**

- **X Corp moderates billions of pieces of content daily**
- **Removal of content is their core operational function**
- **They routinely suspend accounts, remove posts, ban users**
- **Their Terms of Service explicitly prohibit the conduct at issue**
- **They already know this violates their own rules**

**The Question:** What possible harm does X Corp suffer from being required to enforce their own Terms of Service that they enforce millions of times daily against other users?

**3. X Corp's Pattern Shows Selective Enforcement**

**For DMCA Compliance (Removing Infringing Content):**

- **2+ years to respond to notices**
- **Four separate DMCA notices ignored**
- **Federal copyright registration provided**
- **Result: Still not removed as of November 2025**

**For Evidence Destruction (Protecting Corporate Interests):**

- **<2 weeks to execute three-stage account erasure**
- **Surgical precision targeting only identified accounts**
- **Database-level manipulation requiring admin access**
- **Result: Evidence destroyed before court hearing**

The comparison proves: Operational "inability" is selective. When protecting corporate interests, comprehensive capability exists.

**4. The Legal Standard is Met**

**Likelihood of Success on Appeal:**

- ✓ **District court found contributory infringement plausible**
- ✓ **District court ignored mandatory Rule 37(e) spoliation sanctions**
- ✓ **District court permitted evidence destruction during litigation**
- ✓ **False statements by counsel documented and provable**

**Irreparable Harm:**

- ✓ **Copyright infringement continues daily**
- ✓ **Evidence being destroyed in real-time**
- ✓ **Cannot be remedied by money damages later**
- ✓ **Other victims losing their proof during appeal**

**Balance of Hardships:**

- **Appellant: Permanent loss of copyright control and evidence**
- **X Corp: Must enforce their own Terms of Service (which they do constantly)**

**Public Interest:**

- ✓ **Copyright protection serves public interest**
- ✓ **Evidence preservation during appeals serves justice**
- ✓ **Equal enforcement of Terms of Service serves fairness**

## What Appellant Requests:

**Order X Corp to immediately:**

1. **Remove the copyrighted image from Brandon Schwartz's account and all other accounts using it without authorization**
2. **Preserve all account data, metrics, backend logs, deletion records, employee identifications**
3. **Cease further deletions, modifications, retaliatory account creation, evidence destruction**

4. **Produce logs of modifications made during litigation, identity of employees involved in account modifications**
5. **Comply subject to special master monitoring and contempt sanctions for violations**

## The Binary Choice:

**Either preliminary injunctions exist to prevent ongoing harm during appeals, or they don't. If the district court already found the claim plausible, and ongoing harm continues daily, and the defendant suffers no harm from stopping conduct that violates their own rules, what legal basis exists for denial?**

---

# C. Expedited Appellate Review (Ongoing Harm During Standard Timeline)

**Request: Expedited briefing schedule (60 days) and priority oral argument.**

**Legal Basis: FRAP 2 (court may suspend rules in particular cases); Fifth Circuit Internal Operating Procedure 27.3**

## Why Standard Timeline Causes Irreparable Harm:

**Standard Appellate Timeline:**

- **Notice of Appeal: Day 0**
- **Opening Brief: Day 40**
- **Response Brief: Day 70**
- **Reply Brief: Day 84**
- **Oral Argument: 3-6 months after briefing**
- **Decision: 2-6 months after argument**
- **Total: 8-12 months minimum**

**Harm During 8-12 Month Standard Timeline:**

*Evidence Destruction:*

- **Backend modifications continue**
- **Employee accounts further sanitized**
- **Platform changes erase historical data**
- **Witnesses' memories fade**
- **Pattern evidence systematically eliminated**

***Copyright Infringement:***

- **240-360 additional days of violations**
- **Harassment continues unchecked**
- **Professional damage compounds**
- **Commercial value diminishes**

***ADA Violations:***

- **240-360 additional days of cognitive harm**
- **Procedural impossibilities remain enforceable precedent**
- **Pattern validated for use against other disabled litigants**

***Other Victims:***

- **Platform-wide fraud continues**
- **Other advertisers lose their proof**
- **Systematic billing fraud proceeds unchecked**
- **Mathematical impossibilities in metrics remain unexplained**

## Requested Timeline:

- **Opening Brief: 30 days from Notice**
- **Response Brief: 20 days from Opening**
- **Reply Brief: 10 days from Response**
- **Oral Argument: 30 days from Reply**
- **Total: 90 days to argument**

## Why Expedited Review is Justified:

1. **Evidence destruction is time-sensitive - each day of delay enables more destruction**
2. **District court already found claim plausible - not a frivolous appeal requiring extensive review**
3. **Mathematical impossibilities are binary - metrics either violate arithmetic or they don't**
4. **Ongoing ADA violations - statutory duty not subject to standard timelines**
5. **Public interest - affects millions of users and advertisers**

## X Corp's Own Pleadings Support Expedited Timeline:

**X Corp has already stated in their Answer that they have no meaningful response to provide.**

**According to their own sworn pleadings:**

- **They claim to "lack knowledge or information sufficient to admit or deny" 47+ times**
- **They assert they don't know how their own DMCA process works**
- **They claim ignorance of their own billing systems**
- **They state they cannot verify documents they themselves generated**
- **They flatly deny that @AntSocializer and @JohnCenaFan325 are affiliated with X Corp**

**If X Corp genuinely lacks knowledge of their own operations as they claim under oath, they require minimal time to formulate a response.**

**After all:**

- **They cannot provide factual details they claim not to know**
- **They cannot explain systems they assert they don't understand**
- **They cannot defend against evidence they claim doesn't exist**
- **They cannot respond meaningfully to claims about operations they profess ignorance of**

**X Corp's position is binary:**

**Either:**

1. **They DO know their operations (as demonstrated in their Motion to Dismiss), in which case they can respond quickly because they have comprehensive knowledge, OR**
2. **They DON'T know their operations (as claimed in their Answer), in which case they can respond quickly because they have nothing substantive to say**

**In either scenario, X Corp needs minimal time for briefing.**

**What possible justification exists for giving X Corp 30+ days to craft a response when they've sworn under oath they lack knowledge to respond substantively?**

## The Nebraska Pattern: A Warning to This Court

**This Court should be aware of what happened in Appellant's parallel state court litigation in Nebraska:**

**The "Second Appeal" Fiction:**

1. **Appellant filed Notice of Intent to Appeal in Nebraska state court**
2. **Court of Appeals accepted the notice and assigned case number**
3. **Court of Appeals provided deadline for appeal brief (February 26, 2025)**
4. **Appellant filed appeal brief on January 21, 2025 (well within deadline)**

5. **Court clerk rejected the brief, claiming it was a "second appeal" requiring additional fees**
6. **When Appellant pointed out this was THE appeal for the already-accepted notice, clerk insisted on fiction**
7. **Appeal was effectively killed by invented procedural barrier that has no basis in Nebraska law**

**The Logical Impossibility:**

Appellant asked the clerk directly: "If I pay this 'second appeal' fee you're demanding, would you create two separate appeal panels with six different judges reviewing the same case simultaneously?"

The clerk had no answer because no such procedure exists or could exist.

**The Pattern:**

This is identical to what happened in the district court here:

- **Appellant follows procedure correctly**
- **Court accepts initial filing**
- **Court then invents new requirement that has no basis in rules**
- **Court characterizes proper procedure as "second filing" or "excessive filing"**
- **Procedural barrier is timed to make correction impossible**

**This Court Must Not Repeat Nebraska's Mistake:**

**If this Court:**

- **Accepts this Notice of Intent to Appeal**
- **Provides deadlines for briefing**
- **Then later rejects the brief as somehow "duplicative" or "excessive"**
- **Uses timing to make correction impossible**

Then this Court will have proven Appellant's core allegation: that institutional defendants receive protection through procedural manipulation that exists nowhere in the written rules.

## The Alternative:

If expedited review is denied, grant preliminary injunction requiring evidence preservation during standard timeline. The harm from delay must be addressed through either speed or preservation.

## The Binary Choice:

**Either ongoing evidence destruction during appeals matters, or it doesn't. If it matters, expedite review or preserve evidence. If it doesn't matter, explain why evidence destruction during appeals is acceptable.**

**And if X Corp truly "lacks knowledge or information sufficient" to respond substantively (as they claim under penalty of perjury), explain why they need months to say so.**

---

# II. THE POSITION JUDGE ALBRIGHT HAS PUT THIS COURT IN

**Before reaching the legal arguments, this Court must understand what the district court has done:**

**Judge Albright dismissed this case on September 11, 2025, for "tone" and "page limits."**

**He did so:**

- **Without addressing Federal Rule 37(e) spoliation sanctions (mandatory rule, not discretionary)**
- **While creating a legal impossibility (contributory infringement without direct infringement, contradicting *Sony* and *Grokster*)**
- **After X Corp's counsel made demonstrably false statements (provable with screenshots in the record)**
- **While documented evidence destruction was occurring (accounts renamed, metrics altered, during litigation)**
- **As mathematical impossibilities went unaddressed (cumulative impression counts decreasing over time)**

**And he did all of this in a way that gives this Court three options:**

## Option 1: Reverse the District Court

**If this Court reverses, you are stating:**

- **Judge Albright ignored mandatory procedural rules**
- **Judge Albright contradicted Supreme Court precedent**
- **Judge Albright allowed false statements by defense counsel**
- **Judge Albright permitted evidence destruction during litigation**

**This makes the district court look incompetent or compromised.**

## Option 2: Affirm the District Court

**If this Court affirms, you are holding:**

- **FRCP 37(e) spoliation sanctions can be "mooted" by quick dismissal**
- **Contributory infringement can exist without direct infringement (contradicting Supreme Court)**
- **False statements by counsel under Rule 11 can be ignored**
- **Evidence destruction during litigation has no consequences**
- **Pro se litigants can be dismissed for "tone" regardless of evidence**

**This creates precedent that guts federal procedure and invites Supreme Court review.**

## Option 3: Try to Find a Procedural Off-Ramp

**If this Court tries to affirm on different procedural grounds, you are:**

- **Admitting the district court's reasoning was wrong (otherwise why use different grounds?)**
- **Creating new law to avoid addressing the substance**
- **Still facing Supreme Court review when Appellant files cert**

**All three options make this Court look bad.**

## WHY DID JUDGE ALBRIGHT DO THIS?

**This Court must ask: Why would a district judge create this situation?**

**Possible explanations:**

**A. He Genuinely Believes the Evidence Is Insufficient**

**If so, then this Court is reviewing a case where:**

- **Federal copyright registration (objective proof) is insufficient**
- **Mathematical impossibilities (objective fact) can be ignored**
- **Real-time evidence destruction (documented) needs no remedy**
- **False statements by defense counsel (provable) are acceptable**

**If the evidence here is insufficient, what evidence would ever be sufficient?**

**B. He Wanted to Dispose of the Case Quickly**

**If so, then this Court is reviewing a case where:**

- **Speed mattered more than mandatory procedural rules**

- **Efficiency justified ignoring Supreme Court precedent**
- **Expedience excused false statements and evidence destruction**

**If this is acceptable, what procedural rule remains mandatory?**

**C. He Was Influenced by Factors Outside the Record**

**If so, then this Court is reviewing a case where:**

- **The evidence shows violations**
- **The law requires remedies**
- **But neither mattered**

**If this is what occurred, this Court has a serious problem.**

---

# WHAT WAS JUDGE ALBRIGHT THINKING?

**This Court should consider: What did Judge Albright expect would happen after dismissal?**

**He knew:**

- **Appellant documents everything (every filing contains screenshots, exhibits, comprehensive evidence)**
- **Appellant has won at state supreme court level (Nebraska, unanimous reversal)**
- **Appellant had already documented the evidence spoliation in real-time**
- **Appellant had proven X Corp's false statements with backend evidence**
- **Appellant understands appellate procedure**

**So when Judge Albright dismissed for "tone" while ignoring:**

- **Mandatory FRCP 37(e) sanctions**
- **Supreme Court precedent on contributory infringement**
- **False statements by defense counsel**
- **Mathematical impossibilities in metrics**
- **Real-time evidence destruction**

**What did he think Appellant would do?**

## Possibility 1: He Expected Appellant to Give Up

**Most pro se litigants:**

- **Cannot afford appeals**

- **Don't understand appellate procedure**
- **Get exhausted after years of litigation**
- **Accept district court dismissals as final**

**But Appellant:**

- **Has sustained litigation for 10 years**
- **Won unanimous Nebraska Supreme Court reversal**
- **Documents obsessively enough to survive evidence destruction**
- **Gets stronger with each dismissal, not weaker**

**If Albright thought Appellant would give up: miscalculation.**

## Possibility 2: He Expected Fifth Circuit to Defer

**Standard appellate practice:**

- **Deference to district court factual findings**
- **Abuse of discretion standard**
- **Reluctance to reverse on procedural grounds**

**But this case involves:**

- **Mandatory procedural rules (FRCP 37(e) is not discretionary)**
- **Supreme Court precedent (contributory infringement requires direct infringement)**
- **Mathematical impossibilities (not factual disputes, but logical impossibilities)**
- **False statements by counsel (provable with objective evidence)**

**If Albright thought Fifth Circuit would defer on mandatory rules and Supreme Court precedent: miscalculation.**

## Possibility 3: He Expected This Would Take Years

**Normal appellate timeline:**

- **Notice of appeal**
- **Briefing (months)**
- **Oral argument (months later)**
- **Decision (months after that)**
- **By the time resolved: 2-3 years from dismissal**

**But:**

- **Evidence destruction continues during appeals**
- **"Lolwut" account created during appeals (mockery of judicial authority)**
- **Every day of delay proves Appellant's point about institutional impunity**

**If Albright thought time was on his side: miscalculation.**

## Possibility 4: He Expected to Never Explain Himself

**Standard judicial immunity:**

- **Judges rarely face consequences for erroneous rulings**
- **Reversal is "the system working"**
- **No personal accountability for ignoring mandatory rules**

**But Appellant isn't asking Fifth Circuit to review the evidence.**

**Appellant is asking Fifth Circuit to review ALBRIGHT'S CONDUCT:**

- **Did he apply mandatory Rule 37(e)? (No)**
- **Did he follow Supreme Court precedent? (No)**
- **Did he address false statements by counsel? (No)**
- **Did he consider mathematical impossibilities? (No)**
- **Did he permit evidence destruction? (Yes)**

**This isn't "did the district court err?"**

**This is "did the district court follow any rules?"**

**If Albright thought he'd never have to explain himself: biggest miscalculation.**

---

# THE JUDICIAL ACCOUNTABILITY QUESTION: WHAT DOES A JUDGE HAVE TO DO TO LOSE THEIR JOB?

## The Core Question This Court Must Address:

**At what point does a federal judge's conduct become so egregious that consequences must follow?**

**Judge Albright is supposedly an expert in intellectual property law. He sits in the Western District of Texas, which has become a magnet for patent litigation precisely because of claimed expertise in complex IP matters.**

**Yet in this case:**

- **Appellant provided federal copyright registration from the very beginning - the gold standard of proof**

- **The claim was straightforward contributory infringement with documented direct infringement**
- **The evidence was comprehensive, organized, and properly submitted**
- **The legal framework was well-established (*Sony*, *Grokster*)**

**And Judge Albright:**

- **Found the claim "plausible" but dismissed anyway**
- **Ignored mandatory FRCP 37(e) spoliation sanctions**
- **Accepted demonstrably false statements from defense counsel without consequence**
- **Permitted real-time evidence destruction during litigation**
- **Created a legal impossibility (contributory infringement without direct infringement)**
- **Dismissed for "tone" rather than address any substantive issue**

## If This Level of Conduct Is Acceptable, What Isn't?

**This Court must confront an uncomfortable reality:**

**If a federal judge can:**

- **Ignore mandatory procedural rules**
- **Contradict Supreme Court precedent**
- **Allow false statements by counsel under Rule 11**
- **Permit evidence destruction during litigation**
- **Dismiss a case with federal copyright registration for "tone"**

**And face no consequences beyond possible reversal on appeal...**

**Then what conduct would actually result in a judge losing their position?**

## The Implications for Other Litigants:

**This isn't just about Appellant's case.**

**If Judge Albright does this in a relatively simple copyright case with federal registration and comprehensive documentation, what is he doing in:**

- **Criminal cases where people's liberty is at stake?**
- **Complex patent cases where millions of dollars hang in the balance?**
- **Cases with pro se defendants who lack Appellant's documentation skills?**
- **Cases where evidence destruction happens but isn't caught in real-time?**

**The answer is obvious: If he'll ignore mandatory rules here, he's ignoring them everywhere.**

## The Pattern Across Jurisdictions:

**Appellant has now documented this pattern across multiple courts in multiple states:**

**Nebraska State Courts:**

- **Judges ignoring black-letter recusal requirements**
- **Courts inventing "second appeal" fictions**
- **Systematic refusal to address logical contradictions**
- **Perfect record of procedural violations (every single protection failed)**

**Federal Courts (8th Circuit):**

- **District court dismissed Charter West Bank case**
- **8th Circuit: One-sentence affirmance**
- **Later: Nebraska Supreme Court unanimously reversed (public hearing)**

**Federal Courts (5th Circuit - this case):**

- **Judge Albright's comprehensive failure to apply mandatory rules**
- **Systematic protection of institutional defendant despite clear evidence**

**The common thread: Judges can ignore any rule, any precedent, any evidence - and face no consequences.**

## What Happens to Public Trust When Rules Don't Matter?

**If federal judges:**

- **Don't have to follow their own rules**
- **Don't have to apply Supreme Court precedent**
- **Don't have to address evidence no matter how clear**
- **Don't face consequences for any of the above**

**Then what distinguishes a "court of law" from arbitrary power?**

## The Binary Choice for Judicial Accountability:

**Either:**

1. **Federal judges must follow mandatory rules and precedent, in which case Judge Albright's conduct requires reversal and referral for disciplinary review, OR**

2. **Federal judges can ignore rules at will when convenient, in which case this Court should explicitly state that judicial discretion includes the power to disregard**

**FRCP 37(e), Supreme Court precedent, Rule 11, and basic logic**

There is no middle ground.

If this Court reverses on narrow grounds without addressing the accountability question, you're sending a message: "This particular ruling was wrong, but judges who ignore mandatory rules face no real consequences."

## The Criminal Justice Implications:

This Court should consider:

When a federal judge demonstrates he will:

- Ignore mandatory procedural rules when convenient
- Accept demonstrably false statements without scrutiny
- Permit evidence destruction during litigation
- Dismiss cases to avoid addressing uncomfortable evidence

How many criminal defendants has this judge convicted using these same practices?

- How many defense motions has he denied without proper review?
- How many prosecutorial false statements has he accepted without question?
- How much exculpatory evidence has been "destroyed" without consequence?
- How many defendants sit in prison because this judge found procedural excuses to avoid addressing their evidence?

If Judge Albright will do this to someone with comprehensive documentation and legal sophistication, imagine what he does to defendants who can't fight back.

## The Question This Court Cannot Avoid:

What level of judicial misconduct actually results in consequences?

Because if the answer is "none" - if judges can ignore mandatory rules, contradict binding precedent, permit evidence destruction, accept false statements, and face nothing more than possible reversal - then the entire concept of "rule of law" is a fiction.

This Court has the opportunity to answer that question definitively.

---

# THE SYSTEMIC PLAYBOOK: WHY X CORP AND JUDGE ALBRIGHT USE IDENTICAL TACTICS

## This Court Must Recognize: This Is Not Coincidence

**Throughout this litigation, Appellant has documented two parallel systems of manipulation that use identical tactics. Understanding this pattern is crucial because it reveals not just what happened in this case, but the fundamental playbook institutional power uses to avoid accountability.**

## THE PARALLEL SYSTEMS:

**X Corp (Platform Level Control):**

**Makes Rules:**

- **Terms of Service prohibit harassment, impersonation, copyright infringement**
- **Community Guidelines promise fair, consistent enforcement**
- **DMCA procedures promise removal of infringing content**

**Enforces Selectively:**

- **Suspends Appellant for undefined violations**
- **Allows attackers to continue using Appellant's copyrighted image**
- **Ignores four DMCA notices over 2+ years**
- **Creates impersonation accounts that celebrate getting Appellant suspended**

**Never Explains:**

- **Won't state what rule Appellant violated**
- **Won't justify why attackers aren't suspended**
- **Won't explain why DMCA notices ignored**
- **Acts as judge, jury, executioner with no transparency**

**Prevents Neutral Review:**

- **No appeal to external arbiter**
- **No transparency in decision-making**
- **No access to evidence of violations**
- **Keeps Appellant away from anyone who might objectively review the evidence**

**Judge Albright (Judicial Level Control):**

**Has Rules:**

- **FRCP 37(e) mandates spoliation sanctions**
- **Supreme Court precedent (*Sony*, *Grokster*) requires direct infringement**
- **Rule 11 prohibits false statements**
- **Due Process requires consistent standards**

**Applies Selectively:**

- **Accepts X Corp's contradictory pleading positions**
- **Strikes Appellant's evidence for "page limits"**
- **Ignores X Corp's false statements**
- **Dismisses for "tone" rather than address merits**

**Never Explains:**

- **Won't state why FRCP 37(e) doesn't apply**
- **Won't explain how contributory infringement exists without direct infringement**
- **Won't justify accepting simultaneous knowledge and ignorance**
- **Acts as judge, jury, executioner with conclusory rulings**

**Prevents Neutral Review:**

- **Dismisses before jury trial**
- **No explanation that could be reviewed on appeal**
- **No factual findings for appellate court to assess**
- **Keeps Appellant away from jury who might objectively review the evidence**

## THE PATTERN IS IDENTICAL:

**Both systems:**

1. **Control the entire process - no external checks**
2. **Change rules mid-stream - what was acceptable becomes violation**
3. **Accept institutional contradictions - powerful players can claim both A and not-A**
4. **Punish documentation - evidence becomes "excessive" or "harassing"**
5. **Declare completed harm "moot" - violation done = violation unreviewable**
6. **Prevent neutral witnesses - no jury, no public review, no transparency**

## THE STATISTICAL IMPOSSIBILITY:

**Consider what this Court is being asked to believe:**

**That across ten years and multiple jurisdictions, covering:**

- **Bank document fraud (Charter West)**
- **First Amendment violations (OPS)**
- **Copyright infringement (X Corp)**
- **Mathematical fraud (advertising metrics)**
- **Evidence spoliation (systematic destruction)**

**Every single institutional defendant:**

- **Made the same procedural moves**
- **Filed motions at the same strategic times**
- **Made the same contradictory claims**
- **Received the same favorable rulings**

**And every single judge:**

- **Made the same "errors" in the same direction**
- **Ignored the same mandatory rules**
- **Accepted the same logical impossibilities**
- **Dismissed using the same procedural excuses**

**This is either:**

1. **The most improbable series of coincidences in legal history, OR**
2. **A systematic playbook that institutional power uses when citizens document violations**

## THE JURY QUESTION:

**Why does this pattern exist? Because neutral witnesses destroy it.**

**X Corp will never:**

- **Let users vote on whether harassment violates Terms of Service**
- **Submit enforcement decisions to community review**
- **Allow transparent appeals process**
- **Risk neutral observers reviewing the evidence**

**Judge Albright will never:**

- **Let jury review mathematical impossibilities**
- **Submit procedural decisions to public scrutiny**
- **Allow transcript review by neutral observers**
- **Risk twelve citizens reviewing the photographs**

**Both systems share one absolute requirement: NO NEUTRAL WITNESSES.**

## THE NEBRASKA PROOF:

**Appellant won exactly once in ten years: Nebraska Supreme Court with 150 Creighton Law School students present.**

**Not because:**

- **The law was different**

- **The evidence was stronger**
- **The arguments were better**
- **Different rules applied**

**Because: Manipulation requires privacy. Public scrutiny destroys the playbook.**

**When judges know their reasoning will be:**

- **Heard by 150 law students**
- **Recorded for public review**
- **Subject to immediate scrutiny**
- **Evaluated by neutral observers**

**They cannot:**

- **Ignore obvious document fraud**
- **Accept logical impossibilities**
- **Apply contradictory standards**
- **Rule for institutional power regardless of evidence**

## WHY THIS MATTERS BEYOND APPELLANT:

**This playbook explains:**

- **Every employee fired by corporate HR who "investigated" their own complaint**
- **Every insurance denial where the company "reviewed" their own decision**
- **Every student bullied while the school "looked into" their own teacher**
- **Every prisoner claiming misconduct where the prison "examined" their own guards**
- **Every police shooting where the department "investigated" their own officer**

**The pattern:**

1. **Institutional actor has power**
2. **Victim documents violation**
3. **Institution controls investigation**
4. **Institution finds no violation**
5. **Institution punishes victim for "excessive" documentation**
6. **Institution prevents external review**

**It works because it prevents neutral witnesses from reviewing evidence.**

## THE BINARY CHOICE THIS CREATES:

**Either:**

**Option 1: Everyone Is Incompetent**

- **Multiple judges across multiple jurisdictions can't see document fraud**
- **Banking regulators can't recognize altered documents**
- **Attorney General can't spot self-contradicting statements**
- **Federal judges can't understand that cumulative metrics can't decrease**
- **All of them make the same "errors" in the same direction by pure coincidence**

**Option 2: The System Protects Itself**

- **Institutional power uses a consistent playbook to avoid accountability**
- **The playbook works by controlling process and preventing neutral review**
- **Judges participate because exposing institutional violations threatens the system**
- **Citizens who document violations get punished for threatening the arrangement**

**This Court must decide which explanation is correct.**

**Because if Option 2 is true, then:**

- **X Corp isn't the problem - they're using the playbook**
- **Judge Albright isn't the problem - he's following the playbook**
- **The problem is the playbook itself**
- **And this Court is being asked to endorse it**

## THE DEVASTATING QUESTION:

**If institutional actors (X Corp) and judicial officers (Judge Albright) use identical tactics to prevent neutral review of evidence, what distinguishes "platform moderation" from "judicial discretion" from "arbitrary power"?**

**The answer: Nothing, if neutral witnesses are prevented from seeing the evidence.**

**That's why:**

- **X Corp needs to prevent user transparency**
- **Judge Albright needs to prevent jury review**
- **This Court needs to prevent Supreme Court scrutiny**
- **The system needs to prevent public witnesses**

**Because the playbook only works in darkness.**

## WHAT THIS MEANS FOR THIS APPEAL:

**This Court now represents the last chance for neutral review before the Supreme Court.**

**If this Court:**

- **Affirms without addressing the pattern**
- **Issues one-sentence order**
- **Avoids explaining the reasoning**
- **Prevents public scrutiny of the logic**

**Then this Court becomes the next participant in the playbook.**

**If this Court:**

- **Examines the evidence openly**
- **Explains the reasoning publicly**
- **Addresses the pattern directly**
- **Provides transparency for review**

**Then this Court breaks the playbook.**

**The choice is binary. The implications are vast. The pattern is clear.**

---

# WHAT THIS MEANS FOR THIS COURT

**Judge Albright made a calculation.**

**Either:**

**A. He genuinely believed his dismissal was legally sound**

- **Then this Court must explain why mandatory rules are optional**
- **And why Supreme Court precedent doesn't apply**
- **And why mathematical impossibilities need no explanation**

**B. He knew the dismissal was legally unsound but expected no consequences**

- **Then this Court must explain what judges can do without accountability**
- **And why institutional defendants should follow rules if judges don't**
- **And why citizens should respect courts that don't respect their own procedures**

**C. He was directed to dispose of the case regardless of the merits**

- **Then this Court has a much bigger problem than one erroneous dismissal**

**None of these options reflect well on the federal judiciary.**

**But this Court must choose one.**

**Because:**

- **Appellant is not going away**
- **The evidence is not going away**
- **And the questions are not going away:**

**Questions This Court Must Answer:**

- **Can federal judges see photographs?**
- **Must federal judges follow mandatory procedural rules?**
- **Does Supreme Court precedent bind district courts?**
- **What does a judge have to do before facing consequences?**
- **If judges can ignore mandatory rules in simple cases, what happens in criminal cases?**

**Judge Albright gambled that these questions would never be asked.**

**This Court now has to answer them.**

---

## WHAT THIS MEANS FOR THE FIFTH CIRCUIT

**No matter which explanation is true, Judge Albright has put this Court in an impossible position:**

- **Reverse: Make the district court look bad**
- **Affirm on his reasoning: Create precedent that guts federal procedure**
- **Affirm on different reasoning: Admit his reasoning was wrong while still denying justice**
- **Try to avoid it: Watch it go to the Supreme Court anyway**

**This is not a normal appeal.**

**This is a district judge forcing his appellate court to either:**

1. **Publicly correct him, OR**
2. **Join him in pretending not to see obvious evidence**

**And if this Court chooses option 2, the Supreme Court will have the same choice.**

---

# III. THE EVIDENCE JUDGE ALBRIGHT IGNORED

**This case presents a question that should never reach an appellate court: Can federal judges see photographs?**

**Not metaphorically. Not philosophically. Literally: When presented with documentary evidence that proves mathematical impossibilities, systematic fraud, and ongoing contempt of judicial authority—can federal judges acknowledge what their eyes show them?**

**Because if they can, the dismissal below cannot stand.**

**And if they cannot—or will not—then this Court must confront why the same pro se litigant has encountered the same inexplicable judicial blindness across multiple jurisdictions, multiple judges, and multiple years.**

---

## THE PATTERN THAT PRECEDES THIS APPEAL

### A. The Charter West Bank Document (2016-2020)

**Timeline:**

- **2016: Bank altered loan document after Riddle withdrew business**
- **2016-2018: Two attorneys retained, made no progress**
- **2018: Riddle filed pro se in state court - dismissed**
- **Refiled, removed to federal court - dismissed**
- **8th Circuit: One-sentence affirmance**
- **Separate action (2019): Bank sued Riddle for www.charterwestbank.com domain**
- **State court: Bank won**
- **Nebraska Supreme Court (2023): Riddle won - retained domain ownership**
- **Critical factor: Public hearing at Creighton Law School with 150 students present**
- **Strategic timing: Only after this public victory did Riddle pursue OPS for their 2021 First Amendment violations**

**What your eyes show you:**

- **Loan application with child support question**
- **Original answer: "NO" (Riddle's daughter lived with him)**
- **After business withdrawn: Changed to "YES"**
- **Fabricated "X" and line to initial change added to signature line**
- **Riddle never saw or signed altered version**

**What multiple courts did: Dismissed fraud claims without addressing document alteration**

**What Nebraska Supreme Court did: Reversed - but only when hearing was public with witnesses present**

**This was the only time Appellant appeared as a defendant, defending his first amendment right to a gripe website. It was also the only time he won. The connection is not coincidental.**

**The question: Were multiple courts unable to see document fabrication? Or did they choose not to see it until public scrutiny made avoidance impossible?**

## B. The Attorney General's Self-Contradicting Opinion (2022)

January 6, 2022
Page 2

the beginning of Ms. Adamson's comments, she was asked for her address and responded, "my husband wouldn't appreciate that." Ms. Adamson was allowed to continue and spoke for approximately one minute. She then began playing an audio recording from her phone. Board President Holman told Ms. Adamson that the Board needed her public comment and not someone else's. Ms. Adamson did not respond and continued to play the audio recording. Ms. Adamson was then escorted from the podium by security shortly thereafter. Later during the public comment session, the video shows Mr. Riddle approach the podium and state his name, but also stating that his address was irrelevant, and he was not required to give it. Dr. Holman responded that it was a statutory requirement that he give his address. Mr. Riddle continued to argue and state that he was not required to give his address. Mr. Riddle attempted to proceed with his comments and the Board cut his microphone. Mr. Riddle remained at the podium for approximately twenty seconds and then appeared to speak to members of the audience before approaching the Board table. At that point Holman asked security to remove Mr. Riddle and he was escorted out of the [...]

While Neb. Rev. Stat. § 84-1412(1) provides that "the public has the right to attend and speak at meetings of public bodies…," § 84-1412(2) allows public bodies to "make and enforce reasonable rules and regulations regarding the conduct of persons attending, speaking at, videotaping, televising, photographing, broadcasting, or recording its meetings, including meetings held by virtual conferencing." Subsection E of Internal Board Policy No. 8346 states that "[m]embers of the public will be permitted to speak at Board meetings at which a public comment is on the Agenda, and may speak during the time at which the public comment agenda item is being addressed." In addition, Policy No. 8346 "requires that members of the public identify themselves, spelling their name, stating an address and the name of any organization the member of the public is representing." This address requirement comes from Neb. Rev. Stat. § 84-1412(3) which states "[t]he body shall require any member of the public desiring to address the body to identify himself or herself, including an address and the name of any organization represented by such person unless the address requirement is waived to protect the security of the individual."

The video shows Ms. Adamson decline to provide her address when requested. She nevertheless continued to speak for a [...] before playing an audio recording on her phone. Dr. Holman informed Ms. Adamson that she needed to give her own public comment and not play the audio recording. Ms. Adamson did not do so and continued to play the recording. Policy No. 8346 permits members of the public to "speak" at meetings and give public comment. It does not permit members of the public to play audio recordings during the public comment period. Ms. Adamson was not removed from the podium due to the content of her speech but rather because she did not provide her address and continued to play an audio recording rather than speaking during public comment. With regard to Mr. Riddle, he was not allowed to speak because he refused to state his address. Neb. Rev. Stat. § 84-1412(3) as well as Policy No. 8346 requires speakers to give their address. Mr. Riddle refused to do so and did not request a waiver

**What your eyes show you:**

**At the top of the page: "Ms. Adamson was allowed to continue and spoke for approximately one minute."**

**At the bottom of the page: "Ms. Adamson was not allowed to speak because she did not provide her address."**

**Basic logic: Both statements cannot simultaneously be true.**

**What multiple courts did:**

- **Douglas County District Court (2024): twice Dismissed Riddle's First Amendment claim**
- **Nebraska Court of Appeals: Never actually heard the case - appeal killed by "second appeal" fiction that Riddle was not allowed to proceed beyond**

**The question: Were these judges unable to recognize that two contradictory statements on the same page prove one must be false? Or did they choose not to recognize it?**

---

## C. The Pattern Across Ten Years

**2016-2020: Charter West Bank**

- **Document fraud: Visible in photograph**
- **State court, federal court, 8th Circuit: All dismissed**
- **Nebraska Supreme Court: Reversed (public hearing with 150 students present)**

**2021-2025: Omaha Public Schools**

- **First Amendment violation: Visible in transcript and AG opinion**
- **OPS uses court to get a restraining order against Riddle**
- **Judge Duane Dougherty allowed false and disallowed information and granted**
- **Riddle files suit in 2023, by end of 2024,same assigned Judge Dougherty in case against OPS**
- **Received case from recusal of other Judge with unspecified conflict regarding the largest school district in Nebraska**
- **Refused to address the requested recusal based on history of bias against Riddle**
- **District court: Dismissed**
- **Court of Appeals: Appeal killed by invented "second appeal" fiction**

**2025: X Corp**

- **Copyright infringement: Federal registration provided**

- **Mathematical impossibilities: Documented in spreadsheets**
- **Evidence spoliation: Documented in real-time**
- **False statements by counsel: Proven with screenshots**
- **Result: Dismissed for "tone"**

**The common thread: Documentary evidence proving violations gets dismissed on procedural grounds. The only exception: public hearing where avoidance was impossible.**

---

# THE CURRENT EVIDENCE THIS COURT MUST CONFRONT

## D. Twitter/X Corp's Systematic Pattern (2024-2025)



**What your eyes show you:**

- **Riddle's profile showing he's blocked by @JustinERid99862 (impersonator account)**
- **This account uses an image of Riddle and his wife**
- **Post from January 30, 2024 celebrating: "@ProseSelfHelp has been suspended from Twitter!"**
- **Critical detail: Coordinated accounts CELEBRATED getting Riddle suspended**
- **Message: "Thank you everyone for all of your help! Thank you everyone that reported him to keep him from harming my reputation."**
- **This proves: Organized campaign to suspend Riddle during active litigation against X Corp**
- **This account has been using Riddle's image for TWO YEARS with X Corp's knowledge**



**What your eyes show you:**

- **Attorney Brandon Schwartz (licensed ~5 months)**
- **Using Riddle's copyrighted image**
- **Three separate tweets making vile statements about Riddle's wife**
- **Escalating pattern: From questioning to explicitly sexual harassment**
- **Date: August 2025 (during active litigation)**

---





**What your eyes show you:**

- **Profile using Riddle's copyrighted "The Litigator" image - a SECOND copyrighted image being infringed**
- **Display name: "lolwut" (internet slang: "LOL what you gonna do?")**
- **Handle: @AntSocializer**
- **This is the RECREATED version made during this appeal**
- **Original @AntSocializer was X Corp employee (verified "affiliated with X" badge)**
- **That account was renamed to @JohnCenaFan325 during litigation**
- **THIS account was created after the district court dismissed the case**
- **Join date backdated from November 2024 to September 2012 (12 years)**
- **Operations requiring backend database access**

**The message: "We can do whatever we want. LOL what you gonna do?"**

**The pattern: TWO separate accounts currently use images of Riddle and his wife (one for 2+ years), ONE account uses Riddle's "Litigator" image (created post-dismissal). Judge Albright had evidence of this systematic harassment from the very beginning and dismissed Riddle's case for "tone."**

---

# THE BINARY CHOICE FOR THIS COURT

**This Court now faces the same choice that faced multiple previous courts:**

## OPTION 1: The Evidence Is Not Clear

**If this Court finds that:**

- **The bank document's fabrication is not objectively visible**
- **The AG's self-contradiction is not definitively provable**
- **The "lolwut" account is not obviously mocking judicial authority**
- **The mathematical impossibilities (metrics going backward) are not demonstrable**
- **The evidence spoliation (account renaming during litigation) is not documentable**
- **The false statements by X Corp's counsel are not verifiable**

**Then this Court should affirm the dismissal.**

**But this Court must explain:**

- **What additional evidence would be sufficient?**
- **What standard of proof is required when photographs show objective facts?**
- **How can a pro se litigant ever prevail when federal copyright registrations, mathematical impossibilities, and real-time documented spoliation are insufficient?**

## OPTION 2: The Evidence Is Clear But Doesn't Matter

**If this Court finds that:**

- **The evidence IS clear**
- **The violations ARE documented**
- **The mathematical impossibilities DO exist**
- **The evidence spoliation DID occur**
- **The false statements WERE made**

**But the district court properly dismissed anyway because:**

- **Page limits matter more than evidence**
- **"Tone" matters more than truth**
- **Procedure matters more than proof**
- **Corporate counsel's false statements are excusable**
- **Pro se litigants must be deferential even when documenting crimes**

**Then this Court should affirm the dismissal.**

**But this Court must acknowledge:**

- **Federal Rule 37(e) is not mandatory**
- **Supreme Court precedent on contributory infringement is not binding**
- **Rule 60(b)(3) fraud on the court can be ignored**
- **Due Process does not require consistent evidentiary standards**
- **The First Amendment does not protect accurate documentation of fraud**

## OPTION 3: The Evidence Is Clear AND The Law Applies

**If this Court finds that:**

- **The documentary evidence IS objectively clear**
- **Federal Rules of Civil Procedure ARE mandatory**
- **Supreme Court precedent IS binding**
- **Due Process DOES require consistent standards**
- **The First Amendment DOES protect petitioning government**

**Then this Court must reverse the dismissal.**

**And this Court must explain:**

- **Why multiple courts failed to see obvious evidence**
- **Why the ONLY victory came when there were public witnesses (Nebraska Supreme Court)**

- **What distinguishes proper judicial discretion from predetermined avoidance of evidence**
- **What conduct actually results in judicial accountability**

---

# IV. THE DISTRICT COURT'S DISMISSAL CANNOT SURVIVE REVIEW

The district court dismissed with prejudice for Appellant's "conduct" without ever addressing the mathematical impossibilities, evidence destruction, or copyright infringement on their merits. This dismissal fails for multiple independent reasons.

## A. The Court Ignored Mandatory Rule 37(e) Spoliation Sanctions

**Rule 37(e) provides:**

*"If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:*

*(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or*

*(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment."*

**The Three-Stage Evidence Destruction:**

**Stage 1 (Pre-October 2, 2025): Activity logs show specific employee accounts**

- **"@AntSocializer" - identified in court filing**
- **"@Ryanmh_X" - identified in court filing**
- **"Sushant Arora" - system administrator**

**Stage 2 (~October 13, 2025): Generic placeholder replaces specific identifications**

- **Column shows "@using Other" instead of specific names**
- **Original employee identifications erased**

- **Timing: Within days of identification in Appellant's filing**

**Stage 3 (~October 17, 2025): Complete erasure**

- **Activity log column completely blank**
- **No indication anyone modified anything**
- **Evidence of who made changes systematically destroyed**

## Timing Analysis Proves Intent:

- **October 2, 2025: Appellant identifies specific employee accounts in court filing**
- **October 13-17, 2025: Three-stage erasure executed**
- **October 16, 2025: X Corp files opposition denying evidence of employee involvement exists**
- **October 17, 2025: Appellant files spoliation motion with real-time documentation**
- **October 27, 2025: Court declares spoliation "moot"**

## Why "Moot" is Not a Valid Basis to Ignore Rule 37(e):

Rule 37(e) exists precisely because evidence gets destroyed during litigation. The entire purpose of spoliation sanctions is to address destruction that already occurred.

Declaring spoliation "moot" because the destruction was completed before the court ruled makes Rule 37(e) unenforceable - defendants simply need to destroy evidence quickly enough that it's "already done" before the court addresses it.

But the logical absurdity goes deeper:

By declaring the October destruction "moot," Judge Albright must believe one of two impossible things:

Option 1: X Corp destroyed all the evidence they were ever going to destroy in October 2025, and no further destruction would occur.

This defies logic. Why would a company engaged in systematic evidence destruction suddenly stop after one round? If they're willing to destroy evidence once, they're willing to destroy it again.

Option 2: More destruction would occur (or was occurring), but the court wouldn't address it because the first destruction was already "moot."

This creates a perpetual destruction license:

- **Stage 1 destroyed? "Moot - already done"**
- **Stage 2 destroyed? "Moot - already done"**
- **Stage 3 destroyed? "Moot - already done"**

- **Future destruction? "Well, previous destruction was already moot, so..."**

Under this logic, Rule 37(e) can never be enforced. Evidence destruction is always "complete" by the time a court addresses it - that's the nature of destruction. If being "complete" makes it unreviewable, the rule becomes meaningless.

The district court essentially told X Corp: "Destroy evidence quickly, and we'll call it moot. Keep destroying, and each instance will be moot because it happened before we ruled."

## The Questions:

Does Judge Albright genuinely believe X Corp destroyed everything they needed to destroy in October and then stopped?

If evidence destruction becomes "moot" by being completed before the court rules, what is the purpose of Rule 37(e)?

---

# B. The Mathematical Impossibilities Were Never Addressed

## Impossibility 1: Retrograde Cumulative Impressions

Cumulative metrics are monotonic - they can only increase. "Cumulative" means the sum of all previous values plus new values. Later timestamps showing fewer total impressions than earlier timestamps violates the mathematical definition of cumulative.

This occurred on April 1, 2025 - April Fool's Day - with Appellant's documented campaigns showing cumulative impression counts decreasing between successive timestamps. This is mathematically impossible.

## Impossibility 2: Completion Exceeds 100% with Zero Delivery

Percentage cannot exceed 100%. "Completion" requires "delivery." Zero delivery means nothing was delivered. How does a campaign show 112.80% completion when 0.00% was delivered?

## Impossibility 3: Cost-Per-Click Exceeds Cost-Per-Thousand-Impressions

- **CPC = cost per 1 action**
- **CPM = cost per 1,000 impressions**

One thousand impressions should generate multiple clicks. If CPC > CPM, the platform loses money on every transaction. This is economically impossible as a sustainable business model.

## Impossibility 4: Dual Views Showing Contradictory Data

Same campaign, same time period, two different views of X Corp's advertising platform:

- **One view: Shows actual metrics with real numbers**
- **Other view: Shows complete zeros across all fields**

The critical discovery: The app interface shows different numbers than the backend dashboard for the ONE campaign that successfully delivered approximately $38 before X Corp halted it. For every other campaign, both the app and backend show zeros.

Why this matters: X Corp can show advertisers "proof" of delivery in one view while the other view proves nothing was delivered. Which view is real? Both can't be correct.

## District Court's Response to These Impossibilities:

The court never addressed them on the merits. Instead:

- **Struck evidence submissions for exceeding 20-page limit**
- **Dismissed case for Appellant's "conduct" in presenting the evidence**
- **Characterized mathematical proof as "threatening and harassing"**

## The Question:

If mathematical impossibilities in advertising metrics affecting billions in annual revenue can be dismissed without substantive response by characterizing their documentation as "improper tone," what evidence would ever be sufficient to prove fraud?

---

# C. The "Expertise to Amnesia" Pattern

## March 5, 2025 - Motion to Dismiss:

X Corp demonstrated comprehensive operational knowledge:

- **Detailed explanations of DMCA procedures**
- **Specific contract terms and billing mechanisms**
- **Citations to Terms of Service clauses, Purchaser Terms**
- **Sophisticated arguments about Section 230 immunity**
- **Demonstrated understanding of platform functions**

**Conclusion: X Corp has comprehensive operational knowledge.**

## July 25, 2025 - Answer to First Amended Complaint:

**Same attorneys, same company, four months later:**

- **"Lacks knowledge or information sufficient to admit or deny" - used 47+ times**
- **Applied to: Its own DMCA process**
- **Applied to: Its own billing system**
- **Applied to: Its own Terms of Service**
- **Applied to: Authenticity of documents X Corp itself generated**
- **Applied to: Whether employees modified advertising campaigns**

**Conclusion: X Corp claims total operational ignorance.**

## The Impossibility:

**X Corp cannot simultaneously:**

- **KNOW its DMCA procedures well enough to argue Section 230 immunity (MTD)**
- **NOT KNOW whether it follows DMCA procedures (Answer)**
- **KNOW its billing system well enough to explain contract terms (MTD)**
- **NOT KNOW whether it bills correctly (Answer)**
- **KNOW its employee designation system ("[username]_X" = X Corp employee)**
- **NOT KNOW whether "@Ryanmh_X" is an X Corp employee**

## District Court's Response:

**Accepted both positions simultaneously. Never required defendant to explain how the same company has both comprehensive knowledge (when attacking plaintiff's standing) and comprehensive ignorance (when defending against fraud allegations).**

## The Question:

**If defendants can claim operational ignorance of their own systems as an affirmative defense while simultaneously demonstrating operational knowledge to attack plaintiff's claims, what prevents perjury from becoming standard litigation strategy?**

---

# D. The Copyright Infringement Was Ignored

## The Question of "Tone" in Context:

**This Court should pause and consider what any reasonable person would do in Appellant's situation:**

**You wake up one morning. Someone is using your full name, your image, your biographical details, your links - impersonating you online. They're attacking people under your name, trying to provoke fights with individuals who could live near you. They're making it look like you hold political views opposite to your actual beliefs. They're getting you suspended from the platform by coordinating reports against you.**

**What would you do?**

**Most people would report it through the app. Appellant did that - it didn't work.**

**Most people would file formal complaints. Appellant did that - X Corp ignored them.**

**Some people would get a lawyer. Appellant tried - no attorney will take cases against institutional heavy hitters when the implications are this large.**

**What Appellant actually did - which NO reasonable person should have to do:**

1. **Obtained federal copyright registration to make ownership bulletproof**
2. **Filed FOUR separate DMCA notices under penalty of perjury**
3. **Documented every instance of harassment and impersonation**
4. **Filed federal lawsuit with comprehensive evidence**
5. **Continued documenting while X Corp destroyed evidence**
6. **Maintained professional filings despite watching systematic abuse continue**

**X Corp's response:**

- **Twice: "That's impersonation not copyright, use the app" (which doesn't work)**
- **Twice: "You just don't understand what copyright is" (despite federal registration)**
- **Never removed the images**
- **Created new accounts using additional images during the appeal**

**Judge Albright's response after SEVEN MONTHS:**

- **Found the claim "plausible"**
- **Took no action to stop ongoing harm**
- **Eventually dismissed for Appellant's "tone"**

**This Court must ask: What "tone" is appropriate when:**

- **You follow every rule, every law, go beyond what any reasonable person would do**
- **The abuse is not just unacceptable but criminally illegal under federal copyright law**

- **You've spent ten years watching institutions lie: banks change documents, attorneys general publish false opinions, schools conspire to silence citizens, courts ignore obvious evidence**
- **And now a federal judge with expertise in intellectual property sits on your case for seven months, finds your claim "plausible," and dismisses for your "tone" while the abuse continues**

**The district court essentially ruled: Appellant's frustration at systematic institutional abuse is less acceptable than the abuse itself.**

**If that's the standard, then every victim of institutional wrongdoing who documents violations too thoroughly, speaks too emphatically about injustice, or refuses to be deferential while being victimized has no recourse in federal court.**

**The "tone" criticism becomes the ultimate weapon: Abuse someone systematically, ignore their legal remedies, destroy their evidence, lie to the court about it - and when they document it all, dismiss them for being too upset about the abuse.**

## Undisputed Facts:

1. **Appellant owns copyrighted image (federal registration provided)**
2. **Brandon Schwartz and others used images without authorization**
3. **X Corp was served with four separate DMCA notices beginning in late 2023**
4. **X Corp responded twice claiming "that's impersonation not copyright, use the app"**
5. **X Corp responded twice essentially stating Appellant "doesn't understand what copyright is"**
6. **X Corp did not remove images despite federal copyright registration**
7. **Images remain on platform as of November 2025**

**The Timeline of Harm and Judicial Delay:**

- **December 2023/January 2024: Appellant discovers impersonation using his name, images, and attacking people under his identity**
- **Late 2023: Appellant obtains federal copyright registration to make ownership bulletproof**
- **Late 2023-Early 2024: Appellant files FOUR separate DMCA notices under penalty of perjury**
- **X Corp's responses: Dismissive, claiming Appellant doesn't understand copyright law**
- **January 2025: Appellant strategically files both Twitter/X Corp case AND OPS appeal simultaneously to document how both systems respond**
- **January-July 2025: Judge Albright sits on case for SEVEN MONTHS knowing someone is using Appellant's image to impersonate him and attack people**
- **July 2025: Judge finally issues first ruling, finds infringement "plausible"**

- **Judge's action after finding plausible claim: No immediate injunction, no preservation order, allows continued infringement**

**Why the delay matters:** Judge Albright had evidence from day one that Appellant was being impersonated using his copyrighted images, that organized harassment campaigns were targeting him, and that X Corp was ignoring federal copyright law. He sat on this for seven months, then found the claim "plausible," then still took no action to stop ongoing harm.

## District Court's Finding:

*"Assuming Riddle's allegations are true... X Corp.'s conduct could plausibly constitute contributory infringement."* (Dkt. 66, p. 8)

## District Court's Action:

Dismissed with prejudice for Appellant's "conduct" without ever ruling on the merits of the copyright claim the court itself found plausible.

## The Procedural Impossibility:

- **Court finds claim plausible**
- **Court dismisses case before ruling on plausible claim**
- **Dismissal with prejudice prevents re-filing**
- **Result: Plausible claim never gets merits ruling**

## The Question:

If a court can find a claim plausible then dismiss with prejudice before ruling on it, what is the purpose of the plausibility standard?

---

# E. The "Conduct" and "Page Limits" Basis Cannot Survive Scrutiny

## District Court's Stated Reason for Dismissal:

*"Plaintiff's repeated improper filings, threatening and harassing conduct toward Defendant and the Court"* (Dkt. 66)

## What the "Improper Filings" Actually Consisted Of:

- **Documentation of mathematical impossibilities in advertising metrics**
- **Real-time preservation of evidence destruction**
- **Identification of employee accounts modifying campaigns**
- **Screenshots proving defendants' false statements**
- **Timeline showing systematic pattern of erasure**

## The Page Limits Claim:

The district court cited page limits as grounds for striking evidence. Texas local rules do set a 20-page limit for most motions.

But this reveals the fundamental problem:

If a judge cannot understand a complex fraud case involving:

- **Mathematical impossibilities in advertising metrics**
- **Three-stage evidence destruction during litigation**
- **Backend database manipulation**
- **Systematic billing fraud affecting 150,000+ annual advertisers**

Within 20 pages, the judge has a duty to allow additional pages necessary to understand the case properly.

The alternative—dismissing a case because it's "too complex to understand in 20 pages"—transforms page limits from case management tools into shields against judicial responsibility.

Consider the absurdity:

- **Neighbor's tree dispute: 20 pages sufficient**
- **Systematic fraud with mathematical proof: Also 20 pages**
- **If tree dispute requires 25 pages: granted**
- **If fraud case requires 25 pages: dismissed for being too complicated**

A judge who cannot understand fraud allegations has two options:

1. **Allow necessary pages to understand the fraud**
2. **Dismiss without understanding the fraud**

Judge Albright chose option 2. This is not applying local rules—it is abdicating judicial responsibility.

## The Causation Timeline:

Months 1-3: Professional filings, mathematical evidence presented

- **Court response: Silence**

**Months 4-6: Filings become more emphatic about delays**

- **Court response: Still silence**

**After Evidence Destruction Documented: Filings document destruction urgently**

- **Court response: "Threatening and harassing conduct" → Dismissal with prejudice**

## The Pattern:

**"Improper conduct" designation appears ONLY after institutional misconduct is documented, proving the conduct basis is REACTIVE to evidence presentation, not INHERENT to filing quality.**

## The Critical Point: Appellant Followed Procedure Correctly

**The district court's characterization of Appellant's conduct as "improper" obscures a crucial fact:**

**Appellant did not violate any actual procedural rule.**

**What the court called "improper":**

- **Filing evidence of ongoing spoliation (proper preservation under FRCP)**
- **Documenting false statements by counsel (proper advocacy under Rule 11)**
- **Submitting mathematical proof of fraud (proper presentation of evidence)**
- **Requesting enforcement of mandatory rules (proper motion practice)**

**None of these actions violate any rule.**

**The court simply didn't like that Appellant documented violations in real-time and presented them comprehensively. But "the judge doesn't like comprehensive documentation" is not a valid basis for dismissal.**

## The Questions:

**If documenting evidence destruction with real-time screenshots constitutes "threatening and harassing conduct," how should litigants preserve evidence of ongoing destruction during litigation?**

**If 20 pages is insufficient to explain systematic fraud with mathematical impossibilities, does the judge have a duty to read more pages or a right to dismiss for complexity?**

# V. WHY APPELLANT FILED "TOO MANY" DOCUMENTS

## The Live Environment Problem

Judge Albright criticized Appellant for filing numerous supplemental briefs, exhibits, and motions.

This Court should understand why this was necessary:

Evidence destruction in a live production environment creates cascading evidence.

When X Corp modifies their systems to hide fraud:

- **Modifications occur in real-time on live platform**
- **Modifications often reveal OTHER capabilities by accident**
- **Each revelation must be documented IMMEDIATELY or it's changed again**
- **Filing immediately appears as "excessive" to courts unfamiliar with real-time evidence destruction**

## Concrete Examples:

**April 2024: X Corp renames @AntSocializer to @JohnCenaFan325 during active litigation**

- **Intended effect: Hide the account from Appellant's evidence**
- **Unintended consequence: Renaming process visible in real-time, reveals backend database access**
- **Appellant's choice: File supplement immediately (preserves evidence) OR wait to "consolidate filings" (evidence gets modified again)**
- **Appellant filed immediately**
- **X Corp complained: "Appellant is filing too many supplements"**

**May 2024: X Corp attempts to alter historical impression metrics**

- **Intended effect: Remove evidence of impossible metrics**
- **Unintended consequence: Creates NEW impossibility (cumulative counter going BACKWARD)**
- **Appellant's choice: File supplement immediately (preserves new evidence) OR wait (evidence gets corrected)**
- **Appellant filed immediately**
- **District court: "Appellant is overwhelming the court with filings"**

## The Pattern:

1. X Corp destroys/modifies evidence
2. Modification accidentally reveals OTHER capabilities or creates NEW impossible data
3. Appellant documents immediately (only window before next modification)
4. Courts complain about "excessive documentation"
5. X Corp continues modifications (knowing courts criticize victim, not destroyer)

## The Impossible Choice:

**Option 1: File immediately when new evidence appears**

- Preserve evidence before next modification cycle
- Risk court criticism for "excessive filings"
- Appellant chose this - it's why any evidence survived

**Option 2: Wait to "consolidate" filings into fewer documents**

- Evidence gets modified/deleted before consolidated filing
- Lose proof of systematic destruction pattern
- This guarantees fraud becomes unprovable

**Option 3: Stop filing about new discoveries**

- Accept incomplete record
- Allow ongoing destruction to go undocumented
- This is what courts incentivize by criticizing filing volume

## What Albright Should Have Done:

**If Appellant's filings were truly "excessive," the proper judicial response was:**

1. Issue preservation order - freeze all evidence, stop modifications
2. Reduce need for filings - if evidence preserved, fewer supplements needed
3. Appoint special master - technical expert to review destruction claims
4. Expedite proceedings - faster resolution = less destruction time

## What Albright Actually Did:

1. Criticized filing volume
2. Delayed proceedings (giving more time for destruction)
3. Never preserved evidence (ensuring more modifications)
4. Dismissed before addressing merits (mooting all documentation efforts)

**Result: Rewarded evidence destruction, punished evidence preservation**

**This Court Should Consider:**

**If documenting real-time evidence destruction requires "too many" filings:**

- **Should courts preserve evidence to reduce filing necessity?**
- **Should courts expedite to minimize destruction window?**
- **Should courts punish victims for documenting what defendants destroy?**

**Because every filing Appellant made was either:**

- **Necessary to preserve evidence that would otherwise be destroyed, OR**
- **Responsive to new evidence accidentally revealed by destruction attempts**

## The alternative to Appellant's "excessive" filings was:

- **Wait for modifications to complete**
- **File one "clean" brief after all evidence destroyed**
- **Have no proof of what was destroyed**
- **Make systematic fraud unprovable**

**Courts prefer this because:**

- **Cleaner record**
- **Fewer filings to review**
- **Less work for judges**

**Defendants prefer this because:**

- **Evidence destruction succeeds**
- **No pattern documentation**
- **Fraud becomes unprovable**

**Appellant refused to accommodate either preference.**

**That's why evidence survived.**

**And that's why Appellant was dismissed.**

---

# VI. WHERE THIS GOES IF THIS COURT AFFIRMS

# A. The Pattern Courts Use to Avoid Systemic Questions

**Appellant has seen this pattern before:**

**Charter West Bank (Nebraska):**

- **Lower courts: Dismissed fraud claims entirely**
- **Supreme Court: Gave Appellant the website (public hearing)**
- **What they avoided: Ruling that bank committed fraud or that every agency failed**
- **Result: Appellant got property, system avoided accountability**

**This Court will be tempted to follow the same pattern:**

- **Reverse on narrow procedural grounds**
- **Remand for further proceedings**
- **Avoid ruling on Albright's systematic violations**
- **Avoid ruling on X Corp's fraud**
- **Result: Appellant gets another chance, system avoids accountability**

**This Court should understand: Appellant is not allowing that outcome.**

---

# B. Why Narrow Rulings Won't Work This Time

**This appeal does not ask:**

- **"Did X Corp commit fraud?" (merits question)**
- **"Should contributory infringement have been dismissed?" (legal question)**
- **"Was evidence spoliation proven?" (factual question)**

**This appeal asks:**

- **"Did Judge Albright follow mandatory Federal Rule 37(e)?" (Yes or No)**
- **"Did Judge Albright apply Supreme Court precedent?" (Yes or No)**
- **"Did Judge Albright address false statements by counsel?" (Yes or No)**
- **"Did Judge Albright permit evidence destruction during litigation?" (Yes or No)**
- **"What does a federal judge have to do to face consequences?" (Answer Required)**

**These are not complex legal questions.**

**These are binary accountability questions.**

**This Court cannot:**

- **Remand "for reconsideration of Rule 37(e)" (the rule is mandatory, not discretionary)**
- **Reverse "on other grounds" (the violations are in the record)**
- **Rule "without reaching other issues" (the issues are unavoidable)**
- **Give Appellant a narrow victory while letting Albright's conduct stand**

## Because if this Court does any of the above:

Appellant will file cert with the Supreme Court stating: ***"Fifth Circuit acknowledged district court error but refused to address whether district judges must follow mandatory procedural rules or Supreme Court precedent, and refused to answer what judicial conduct actually results in consequences."***

**And the Supreme Court will have to answer those questions.**

**So this Court can answer them now, or this Court can force SCOTUS to answer them later while explaining why the Fifth Circuit didn't.**

---

# C. The Supreme Court Will Face the Same Choice

If this Court affirms the district court's dismissal, Appellant will file a petition for writ of certiorari.

## The Supreme Court will receive:

- **These same photographs**
- **These same mathematical impossibilities**
- **These same documented instances of evidence spoliation**
- **These same false statements by defense counsel**
- **These same ignored mandatory procedural rules**

**Plus one additional thing:**

**Evidence that TWO levels of federal courts looked at objective documentary proof and somehow could not see violations of law.**

## The Supreme Court's Options:

**GRANT CERTIORARI:**

- **Acknowledge that federal courts failed to apply mandatory rules**
- **Reverse the Fifth Circuit**
- **Establish that evidence spoliation during litigation has consequences**

- **Clarify that contributory infringement requires direct infringement (restating *Sony* and *Grokster*)**
- **Make clear that pro se litigants cannot be dismissed for "tone" when documenting fraud**
- **Address what judicial conduct actually results in accountability**

**Result: The Fifth Circuit and District Court both reversed, federal judiciary questions how this reached SCOTUS**

**DENY CERTIORARI:**

- **Allow precedent to stand that:**
  - **FRCP 37(e) is optional**
  - **Contributory infringement needs no direct infringement**
  - **Federal copyright registrations are insufficient proof**
  - **Evidence destruction during litigation is consequence-free**
  - **Mathematical impossibilities need no explanation**
  - **Federal judges face no consequences for ignoring mandatory rules**

**Result: Federal procedure is gutted, institutional defendants have a roadmap, judges can ignore any rule**

## Either Way, The Public Sees This Brief:

**Whether the Supreme Court grants or denies cert, this brief will be public.**

**Over 17,000 people are currently monitoring this case on PACER. Most will follow it to the Fifth Circuit. The reason every significant document is immediately available free on CourtListener is because people pay to download it on PACER the moment it's filed.**

**The American people will see:**

- **Federal copyright registration was deemed insufficient**
- **Mathematical impossibilities (metrics going backward) were ignored**
- **Evidence was destroyed during litigation with no consequence**
- **Defense counsel made false statements with no sanctions**
- **The "lolwut" account mocked judicial authority during appeal**
- **Multiple courts somehow could not see obvious documentary evidence**
- **No answer was provided to what judicial conduct results in consequences**

**If the Supreme Court denies cert after seeing this: The message is clear: Federal courts protect institutional defendants regardless of evidence, and federal judges face no accountability regardless of conduct.**

**If the Supreme Court grants cert: The message is also clear: The Fifth Circuit and District Court failed so badly that SCOTUS had to intervene.**

**What Appellant Has Built:**

After the bank, state, and courts all lied about the altered child support document that prevented Appellant from obtaining his home, Appellant set out to prove the system is rigged against citizens without institutional power.

Appellant has now built a record that - if the Supreme Court chooses not to review - proves there is no justice absent membership in the bar association or expensive representation.

Appellant would have preferred representation. No attorney will take these cases because Appellant goes after heavy hitters, not mom-and-pop operations. The institutional implications are too large.

But whether the Supreme Court reviews or not, this record will exist forever. The proof is granular, comprehensive, and irrefutable. The entire system is exposed in a way that cannot be explained away.

**The Personal Danger the Court's Inaction Creates:**

This Court should understand: Judicial inaction puts Appellant in physical danger.

People make threats against Appellant online with impunity - these threats are allowed to remain on X Corp's platform. When Appellant responds to these threats, X Corp suspends him for "violations."

Until this Court (or some court) puts a stop to the pattern of institutional protection, those making threats know they can act without consequence. The system has demonstrated repeatedly that it will protect institutional actors and punish those who document violations.

Appellant must continue fighting because the alternative - accepting that the system is irretrievably corrupt - means accepting that no citizen has recourse against institutional power.

This Court cannot win by affirming.

The only question is whether this Court wants to fix the problem now, or let the Supreme Court fix it later while asking why the Fifth Circuit didn't.

---

# VII. THE CASCADING HARM OF DELAY

# What Was Destroyed While Judge Albright Delayed

**This Court must understand: evidence destruction during litigation is not just about this case.**

**While Judge Albright:**

- **Criticized Appellant's "page limits"**
- **Objected to Appellant's "tone"**
- **Delayed addressing Rule 37(e) sanctions**
- **Eventually dismissed for procedural reasons**

## X Corp systematically destroyed:

**1. Appellant's Evidence (Partially Survived)**

- **@AntSocializer renamed to @JohnCenaFan325 (documented in real-time)**
- **Metrics altered on live campaigns (screenshots preserved)**
- **Historical impression counts modified (spreadsheets saved)**
- **Appellant survived only through obsessive real-time documentation**

**2. Other Advertisers' Evidence (Completely Destroyed)**

- **150,000+ businesses purchased X Corp advertising annually**
- **Unknown number experienced same impossible metrics**
- **No systematic preservation occurred (they didn't know to document)**
- **By the time of dismissal: evidence gone, window closed**

**3. Historical Pattern Evidence (Erased)**

- **Years of potentially fraudulent metrics**
- **System-wide billing irregularities**
- **Backend manipulation capabilities**
- **Provable pattern now exists only in Appellant's preserved records**

**4. Future Victims' Ability to Prove Pattern (Eliminated)**

- **Appellant's documentation shows the fraud methodology**
- **But evidence of other instances was destroyed during litigation**
- **Future victims cannot prove "this happened to others"**
- **X Corp can claim Appellant's case was "isolated incident"**

---

# The Legal System Enabled This Destruction

**The sequence:**

**March 2024: Appellant files comprehensive lawsuit with real-time documentation**

**March-September 2024:**

- **Albright criticizes Appellant's documentation as "too emphatic"**
- **Albright objects to page limits (Appellant documenting extensively)**
- **X Corp destroys evidence (accounts renamed, metrics altered)**
- **Appellant preserves destruction in real-time (screenshots, videos, spreadsheets)**

**September 11, 2025: Albright dismisses for "tone" and "page limits"**

**September 2025-present:**

- **Evidence destruction accelerates**
- **"Lolwut" account created using Appellant's image (contempt during appeal)**
- **Other victims' evidence: already gone**
- **Historical pattern: already erased**

**Result:**

- **Appellant barely survived with documentation**
- **Everyone else: evidence destroyed**
- **Albright: enabled destruction by delaying, then "mooted" sanctions by dismissing**

---

# This Is Not Just Fraud - This Is Evidence Genocide

**X Corp didn't just commit fraud.**

**X Corp committed fraud, then:**

1. **Destroyed evidence while litigation pending**
2. **Knew courts would delay (standard practice)**
3. **Knew delays benefit defendants (evidence destruction opportunity)**
4. **Knew dismissal would "moot" sanctions (Albright's exact ruling)**

**The legal system didn't just fail to stop this.**

**The legal system enabled it by:**

1. **Criticizing Appellant's documentation as "excessive"**
2. **Delaying while evidence was destroyed**
3. **Dismissing before sanctions imposed**

4.  **Ensuring no other victim can prove the pattern**

---

# The Victims Who Will Never Get Justice

**Because Albright dismissed instead of sanctioning:**

**Past Victims:**

- **Paid for fraudulent advertising (2020-2024)**
- **Evidence destroyed during this litigation**
- **Statute of limitations running**
- **Cannot prove fraud because evidence is gone**

**Current Victims:**

- **Experiencing same fraud right now**
- **Cannot prove pattern (historical evidence destroyed)**
- **Cannot point to other cases (Appellant's case dismissed)**
- **X Corp can claim "isolated incident"**

**Future Victims:**

- **Will experience same fraud methodology**
- **Will lack pattern evidence (destroyed during this case)**
- **Will face same "your documentation is too emphatic" dismissal**
- **Will be told "if this were real, others would have complained"**

**But others CAN'T complain because the evidence was destroyed while courts delayed.**

---

# Albright's Dismissal Completed the Crime

**If Albright had:**

- **Applied Rule 37(e) sanctions immediately (mandatory)**
- **Preserved evidence through court order**
- **Prevented further destruction**
- **Then other victims might still have recourse**

**Instead, Albright:**

- **Delayed for months while evidence destroyed**
- **Dismissed before sanctions imposed**
- **"Mooted" all spoliation claims**
- **Ensured destruction was complete before addressing it**

**This is not negligence.**

**This is not judicial discretion.**

**This is enabling evidence destruction, then dismissing to "moot" the consequences.**

**And if this is acceptable conduct for a federal judge, what conduct isn't?**

---

# VIII. THIS IS THE MOST IMPORTANT SOCIAL MEDIA FRAUD CASE IN FEDERAL COURTS

## Scale of Impact

**150,000+ businesses annually purchase advertising on X Corp's platform (formerly Twitter).**

**If the dismissal stands, every one of them now knows:**

- **Mathematical impossibilities in billing metrics cannot be litigated**
- **Evidence will be destroyed during litigation with no consequences**
- **False statements by defense counsel will not be sanctioned**
- **Contributory infringement claims will be dismissed even with direct infringement**
- **Complaining too emphatically about fraud = dismissal for "tone"**
- **Federal judges who enable this face no consequences**

**Conservative estimate of X Corp's annual advertising revenue: $1.5-3 billion.**

**If even 5% of those metrics are fraudulent (conservative, based on Riddle's documented examples), that's $75-150 million in annual fraud.**

## Multiply across:

- **Facebook/Meta**

- **Google/YouTube**
- **TikTok**
- **Instagram**
- **LinkedIn**
- **Snapchat**

**We're discussing tens of billions of dollars in annual advertising spend with no accountability if courts refuse to see mathematical impossibilities.**

---

# Every Other Social Media Platform Is Watching This Case

**If this dismissal stands, every social media platform knows:**

- **Destroy evidence during litigation (consequence: none)**
- **Create mathematically impossible metrics (consequence: none)**
- **Have counsel make false statements (consequence: none)**
- **When caught, call the victim "too emphatically worded" (consequence: dismissal for them)**
- **The federal judge who enables all this faces no consequences**

**This case is teaching institutional defendants that:**

- **Evidence doesn't matter (it can be destroyed)**
- **Truth doesn't matter (false statements are consequence-free)**
- **Math doesn't matter (impossibilities need not be explained)**
- **Federal rules don't matter (FRCP 37(e) can be "mooted")**
- **Supreme Court precedent doesn't matter (*Sony* and *Grokster* can be ignored)**
- **Judicial accountability doesn't exist (judges can ignore mandatory rules without consequence)**

**The only thing that matters is having expensive counsel and outlasting pro se litigants.**

---

# This Affects Half of All Americans—Now and Future

**According to Pew Research:**

- **68% of American adults use Facebook**
- **40% use Instagram**
- **31% use Pinterest**
- **25% use LinkedIn**

- **23% use Twitter/X**
- **21% use Snapchat**

**If this Court affirms, you are telling 150+ million Americans:**

*"When social media platforms defraud you with mathematically impossible metrics, federal courts will not help you. Evidence doesn't matter. Math doesn't matter. Truth doesn't matter. Only your ability to hire expensive counsel matters. And federal judges who enable fraud face no consequences."*

**Future Americans: Every generation growing up now and in the future will use social media. If this Court establishes that social media fraud is immune from federal scrutiny and judges who enable it face no accountability, generations of Americans will be systematically defrauded with no recourse.**

---

# IX. WHAT THIS COURT MUST DECIDE

## The Binary Questions

**This appeal presents binary questions with no middle ground:**

## Question 1: Evidence Preservation

**Either:**

- **Evidence destruction during litigation requires sanctions (Rule 37(e) means something)**

**Or:**

- **Evidence destruction becomes "moot" by being completed (Rule 37(e) is unenforceable)**

## Question 2: Mathematical Proof

**Either:**

- **Cumulative metrics cannot decrease and percentages cannot exceed 100% (math means something)**

**Or:**

- **Mathematical impossibilities are dismissible as "plaintiff's allegations" (math is subordinate to power)**

## Question 3: Pleading Consistency

**Either:**

- **Defendants cannot claim both knowledge and ignorance of identical facts (perjury has consequences)**

**Or:**

- **Contradictory pleading positions are acceptable strategy (truth is subordinate to tactics)**

## Question 4: ADA Accommodation

**Either:**

- **Courts must provide reasonable accommodation for cognitive disabilities (ADA means something)**

**Or:**

- **Procedural contradictions targeting disclosed disabilities are acceptable (ADA doesn't apply to litigation)**

## Question 5: Preliminary Relief

**Either:**

- **Preliminary injunctions exist to prevent ongoing harm during appeals (procedure serves justice)**

**Or:**

- **Plausible claims can be dismissed before merits ruling without preservation (procedure defeats justice)**

## Question 6: Judicial Accountability

**Either:**

- **Federal judges must follow mandatory rules and precedent (judicial oath means something)**

Or:

- **Federal judges can ignore rules at will when convenient (judicial discretion is unlimited)**

---

# X. APPELLANT KNOWS THE PLAYBOOK

**Appellant has been doing this for 10 years.**

**Appellant knows how courts avoid systemic accountability:**

1. **Give narrow victories (website, remand, partial reversal)**
2. **Avoid addressing institutional conduct (bank fraud, agency failure, judicial violations)**
3. **Hope the litigant goes away (exhaustion, resources, time)**
4. **If they don't go away, repeat (more narrow rulings, more avoidance)**

**This strategy worked on every other litigant in history.**

**It will not work on Appellant.**

## Because Appellant:

- **Won at Nebraska Supreme Court (public hearing with 150 students)**
- **Had X Corp destroy evidence and documented it in real-time**
- **Gets stronger with each institutional lie, not weaker**
- **Understands the pattern and won't accept narrow victories that avoid accountability**

**Appellant is not seeking justice in one case.**

**Appellant is auditing the system.**

**And the system keeps providing more evidence.**

---

# What This Court Must Decide

**Not: "Should we reverse Albright's dismissal?"**

**But: "What happens if we don't?"**

**If this Court affirms or gives narrow ruling:**

- **Appellant files cert (already planning)**
- **Additional institutional defendants emerge (pattern continues)**
- **Public record grows (evidence accumulates)**
- **Questions about judicial accountability remain unanswered**
- **Supreme Court eventually has to address it (inevitability)**

**If this Court reverses and addresses Albright's conduct:**

- **Precedent established (mandatory rules are mandatory)**
- **Future defendants deterred (evidence destruction has consequences)**
- **Institutional accountability restored (courts will verify statements)**
- **Judicial accountability affirmed (judges must follow rules)**
- **System improves (one case at a time)**

**Either way, Appellant continues.**

**The only question is whether this Court wants to be:**

- **The court that fixed the problem, OR**
- **The court that forced SCOTUS to fix the problem while asking why the Fifth Circuit didn't**

---

# XI. CONCLUSION

**The evidence is mathematical.**

**The contradictions are logical.**

**The harm is ongoing.**

**The accountability question is unavoidable.**

**This Court must choose:**

## Option 1: Address the Evidence and the Accountability

- **Mathematical impossibilities get merits ruling**
- **Evidence destruction gets sanctioned**
- **Contradictory pleading positions get consequences**

- **ADA accommodation gets enforced**
- **Judicial conduct gets addressed**
- **Justice remains possible**

## Option 2: Avoid the Evidence and the Accountability

- **Mathematical proof dismissed as "conduct"**
- **Evidence destruction declared "moot"**
- **Perjury becomes standard strategy**
- **ADA violations proceed unchecked**
- **Judicial misconduct goes unaddressed**
- **Justice becomes impossible**

---

**There is no middle ground.**

- **The metrics either decrease or they don't.**
- **The percentages either exceed 100% or they don't.**
- **The defendants either know their operations or they don't.**
- **The ADA either requires accommodation or it doesn't.**
- **Preliminary injunctions either prevent ongoing harm or they don't.**
- **Federal judges either must follow mandatory rules or they don't.**
- **Judicial conduct either has consequences or it doesn't.**

**What this Court decides will determine whether evidence, logic, law, and judicial accountability mean anything—or whether institutional power is supreme.**

**Appellant requests this Court choose justice and accountability.**

---

**Respectfully submitted,**

**Justin Riddle**
 **Pro Se Appellant**

**402-813-2156**

---

# CERTIFICATE OF SERVICE

I hereby certify that on November 9th, 2025, a true and correct copy of this Notice of Intent to Appeal and Emergency Motion for Immediate Relief was served via CM/ECF on all counsel of record.

/s/ Justin Riddle
 Justin Riddle

---

# APPENDIX: THE IMAGES THIS COURT MUST ADDRESS

1. **Charter West Bank fabricated loan document (showing pattern across jurisdictions)**
2. **Attorney General's self-contradicting opinion (showing pattern continues)**
3. **Justin's Twitter profile showing impersonator block (showing X Corp's pattern begins)**
4. **Brandon Schwartz harassment tweets using Justin's image (showing escalation)**
5. **"Lolwut" account with "The Litigator" image (showing contempt during appeal)**

These images will be referenced throughout the full opening brief.

But they are provided here so this Court can see immediately what Judge Albright somehow could not see.

This Court's clerks have access to AI legal research tools. Feed this brief into any competent LLM and ask: 'What are the strongest issues on appeal?' The AI will identify the mandatory rule violations, Supreme Court precedent conflicts, and mathematical impossibilities in under one minute. If artificial intelligence can see the problems in 60 seconds, why couldn't Judge Albright see them in 7 months?

---

## END OF NOTICE OF INTENT TO APPEAL

Formal Opening Brief will be filed within the time permitted by Fifth Circuit Rules.