# UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

**No. 25-50951**

**JUSTIN RIDDLE,**

Plaintiff-Appellant

v.

**X CORP.,**

Defendant-Appellee

## OPPOSED EMERGENCY MOTION FOR IMMEDIATE RELIEF PENDING APPEAL

X Corp has indicated it opposes this motion. This opposition creates certain logical difficulties given X Corp's sworn Answer in the District Court (Dkt. 52), wherein X Corp denied possessing knowledge of the very systems it must now claim competence to operate in order to justify opposing this motion. The contradiction between "we don't know how our platform works" (sworn 47 times in the Answer) and "we are sophisticated enough to oppose relief regarding our platform operations" (opposition brief) presents what one might generously characterize as a credibility problem.

Appellant respectfully requests this Court immediately order X Corp to:

1. Restore Appellant's account access within 24 hours
2. Cease processing reports from Brandon Schwartz
3. Preserve all evidence related to suspension patterns and DMCA claims
4. Show cause why systematic lockouts during federal litigation do not constitute obstruction of justice

This motion is brought under Fed. R. App. P. 8 and this Court's inherent authority to prevent obstruction of justice during pending appeals.

# I. STATEMENT OF FACTS

As of the moment of filing this emergency request, my account remains locked based on false statements from a license attorney.

A. Three Sworn Statements in Five Hours

Attorney Brandon Schwartz filed three DMCA takedown notices on November 23, 2025, each containing sworn statements under penalty of perjury regarding identical content. The factual basis evolved considerably over a five-hour window.

- **LEGAL-1744655 (November 23, 2025, 4:42 AM Central Time):** "I took these photographs approximately three years ago. Justin Riddle is misappropriating them without any excusable legal justification or reason without the copyright owner's consent."
- **LEGAL-1745113 (November 23, 2025, 7:04 AM Central Time—2 hours, 22 minutes later):** "This photo is being misappropriated without legal justification or excuse by a user attempting to monetize their X account in connection with the sale of legal services without permission of the copyright holder."
- **LEGAL-1822318 (December 7, 2025):** "This user holds themselves out to be a law firm. I am an attorney. They are misappropriating this image without my permission on an account that purports to hold itself out as providing legal services without any legal justification or excuse."

Three DMCA filings. Three sworn statements under penalty of perjury. Three different factual theories. Same photographs. Same URLs. Same complainant. Same licensed attorney. At least two of these sworn statements are necessarily false, given their mutual inconsistency. Possibly all three.

The 4:42 AM filing claims photographs taken "approximately three years ago"—placing the photography date in November 2022. Brandon Schwartz (California Bar No. 361655) was admitted to practice on May 7, 2025—thirty months after the alleged photography date. The photographs depict him in professional attorney attire. The timeline raises certain questions regarding when Attorney Schwartz began presenting himself as a practicing attorney.

Attorney Schwartz operates Schwartz APC from Suite 244, 1104 Corporate Way, Sacramento, CA 95831. This address is a virtual mailbox and mail forwarding service. The firm's physical presence consists of the mailbox, though the server hosting that mailbox is unlikely to reside in the shared workspace building itself. His website lists expertise in eight distinct practice areas: copyright law, trademark law, business litigation, employment law, real estate law, intellectual property, contract disputes, and civil litigation. Attorney Schwartz was admitted to practice seven months ago. The timeline suggests either remarkable early-career productivity or optimistic marketing. Notably, no mention of his expertise in interfering with litigation through online harassment is mentioned.

Appellant filed Counter-Notice via email on November 23, 2025. X Corp accepted the email Counter-Notice and initiated the statutory 10-14 day period. Schwartz did not file a lawsuit within the statutory window. The statutory period expired. X Corp restored the content on December 6, 2025—X Corp's own affirmative decision that the content was non-infringing under 17 U.S.C. § 512(g). Appellant did not restore the content. X Corp restored it.

B. The December 7 Re-Filing: X Corp Reverses Its Own Decision

On December 7, 2025—one day after X Corp restored the content—Schwartz filed another DMCA claim on the same URLs, including the same Tweet IDs.

**The timeline:**

- **November 23, 2025:** Schwartz files DMCA claim; X Corp removes content
- **November 23, 2025:** Appellant files Counter-Notice via email; X Corp accepts it
- **November 23 – December 6, 2025:** Statutory 10-14 day window; Schwartz does not file lawsuit
- **December 6, 2025:** X Corp restores content (X Corp's decision, not Appellant's)
- **December 7, 2025:** Schwartz re-files; X Corp removes the same content it restored 24 hours earlier

X Corp made the affirmative judgment that the content was non-infringing. X Corp acted on that judgment by restoring the content. Within 24 hours, X Corp reversed its own judgment based on another filing from the same attorney presenting a different sworn theory. The statute does not contain a "re-adjudication upon request" provision. Schwartz obtained no court order. He simply re-filed the identical claim on the identical Tweet ID that X Corp had just restored. X Corp processed the duplicate claim as if its own prior adjudication never occurred.

C. Selective Enforcement Proving Knowledge of Protected Speech

Appellant's November 22, 2025 post used four images of Schwartz with commentary: "People change as they grow. Look how fit Brandon looked 10 years ago. His body has grown into his head."

- **Image 1:** Professional photograph from Schwartz's attorney website (SchwartzAPC.com). **X Corp Action: Left up.**
- **Image 2:** Photograph from Schwartz's Facebook profile. **X Corp Action: Removed (both November 23 and December 7).**
- **Image 3:** Modified version with text overlay and digital alterations. **X Corp Action: Left up.**
- **Image 4:** Additional modified version. **X Corp Action: Left up.**

X Corp removed the unmodified Facebook photograph. X Corp retained the photograph from Schwartz's professional attorney website—where Schwartz actually advertises legal services. X Corp retained two parody versions. X Corp retained Appellant's account labeled "@ProSeSelfHelp" and "www.SelfLegalAid.com."

If Appellant was "selling legal services using Schwartz's image," as Schwartz swore under penalty of perjury, X Corp's selective retention of the business website photograph presents certain logical difficulties. The photograph from the actual attorney's actual law firm website remained active. Only the specific photograph Schwartz requested removed was removed.

Meanwhile, Schwartz utilizes Appellant's federally registered copyrighted image (VAu 1-519-728), modified with "clown makeup" effects to mock Appellant. X Corp permits this content to remain active, presumably accepting a parody defense. Appellant utilized a public Facebook photograph of Schwartz to comment on his physical appearance changes. X Corp removed content and suspended Appellant's account. X Corp applies the parody exception to protect the licensed attorney's use of Appellant's federally registered photograph. X Corp withholds that same exception from the pro se litigant's commentary using a public Facebook photograph. The distinction appears to depend on user status rather than legal standards.

D. The Impossible Counter-Notice Loop

X Corp removed content on December 7, 2025, and demanded Counter-Notice via web form accessible only through account login. Appellant's account was suspended, preventing web form access. X Corp demanded Appellant use a process that X Corp had rendered impossible to use.

Appellant responded December 8, 2025, 7:40 AM: "This is literally impossible as my account is locked... It is illegal for you to prevent someone from defending... by suggesting they use a process that you control and you have rendered useless." X Corp responded with automated instruction to use the web form. The response was verbatim identical to the previous automated message.

Appellant's second notice, December 8, 2025, 8:47 AM: "I note that your latest response is an exact copy... Your instructions are impossible to follow." X Corp's response was, again, the automated instruction to use the inaccessible web form. X Corp refused to process Counter-Notice via email—the identical method X Corp accepted on November 23, 2025 for the identical content from the identical complainant. The content did not change. The complainant did not change. The Counter-Notice method did not change. X Corp's willingness to accept email changed. The only other variable that changed: Texas case dismissed October 27, 2025.

E. The December 3-8 Systematic Lockout Pattern

Between December 3-8, 2025, X Corp implemented a suspension cycle with mechanical regularity:

- **December 3:** Account suspended based on Schwartz report. Appellant appealed. Account restored.
- **December 4:** Account suspended based on new Schwartz report. Appellant appealed. Account restored.
- **December 5:** Account suspended based on new Schwartz report. Pattern continues through December 8.

Each restoration was followed within hours by a new suspension based on a new report from Schwartz. X Corp restored the account each time, confirming the reports lacked merit. X Corp then processed the next report from Schwartz anyway. The cycle continues.

On December 8, 2025—the date Appellant was granted CM/ECF access to file in this Court—Appellant received twelve identical "We have an update on your..." notifications all bearing the identical timestamp "38m." Twelve separate reports from the same complainant against Appellant's account simultaneously. Attorney Schwartz took screenshots documenting his mass-reporting campaign. X Corp processed all twelve reports from an attorney who had already filed three DMCA claims with contradictory sworn statements under penalty of perjury. The simultaneity—twelve notifications at the exact same timestamp—is not consistent with human moderator review of twelve separate posts over time.

F. 800 Days of Federal Copyright Registration

Appellant holds federal copyright registration VAu 1-519-728 for a photograph of himself. An impersonator account used this federally registered copyrighted photograph while claiming to be Appellant. Appellant submitted federal copyright registration (statutory prima facie proof under 17 U.S.C. § 410(c)), government-issued identification matching the photograph, and documentation that Appellant's face matches the registration. X Corp rechanneled the DMCA notices to "impersonation/harassment" reporting channels, circumventing DMCA statutory obligations. X Corp refused to remove the impersonator account for 800 days following submission of federal copyright registration and government identification. Appellant filed these claims on business days during business hours over a two-year period.

Attorney Schwartz filed his first DMCA claim on Sunday, November 23, 2025. Appellant received notice at 4:42 AM Central Time. X Corp processed this Sunday morning filing and removed content within hours. Two hours and twenty-two minutes later, Schwartz filed a second DMCA claim presenting a contradictory legal theory. X Corp processed this second Sunday morning filing within hours as well. X Corp's Sunday morning 4:42 AM processing capabilities are apparently more sophisticated than its business-hour processing of federal registrations with government identification.

The disparity becomes stark when presented in tabular form:

| Factor | Appellant's Experience | Schwartz's Experience |
| --- | --- | --- |
| Copyright Registration | Yes (VAu 1-519-728) | No |
| Government ID Provided | Yes | No |
| Prima Facie Statutory Proof | Yes (17 U.S.C. § 410(c)) | No |
| Actual Infringement | Yes (impersonator) | No (commentary/parody) |
| Actual Infringement | Yes (impersonator) | No (commentary/parody) |
| Filing Day/Time | Business days/hours | Sunday, 4:42 AM CT |
| Processing Time | 800+ days | Hours (same day) |
| Number of Times Processed | Once (eventually) | Three times |
| Sworn Contradictions | None | Three different theories |

This is not a case of inconsistent application of neutral policies. This is selective enforcement based on complainant identity during federal litigation.

## II. PROCEDURAL POSTURE

A. The District Court's Non-Response Pattern

- **March 2025:** Emergency motion regarding X Corp's unauthorized activation of location tracking on Appellant's account. Unaddressed for approximately seven months before dismissal.
- **August 19, 2025:** Emergency motion documenting Schwartz's harassment campaign using Appellant's federally copyrighted photograph. The motion is now 111 days old. It remains unaddressed. Schwartz apparently interpreted the district court's silence as permission. The November 23 and December 7 DMCA filings occurred after the district court failed to address the August emergency motion. This pattern—escalate misconduct, observe judicial non-response, escalate further—demonstrates why immediate relief from this Court is necessary.
- **October 17, 2025:** First emergency spoliation motion documenting systematic three-stage evidence destruction (Dkt. 71).

- **October 23, 2025:** Second emergency spoliation notice documenting continued erasure (Dkt. 72).

The district court's October 27, 2025 order dismissing the case declared these spoliation motions "moot." They were six days old and ten days old respectively. The district court dismissed the entire case for "tone" without addressing emergency motions pending for seven months, ADA accommodation requests, or systematic evidence destruction.

B. X Corp's Answer and the Discovery Problem

X Corp's July 25, 2025 Answer stated "X Corp lacks knowledge or information sufficient to form a belief as to the truth of the allegations" forty-seven times regarding X Corp's own systems, billing processes, Terms of Service, and platform operations. (District Court Dkt. 52). X Corp swore, under penalty of perjury, that it does not understand how its own platform works. Discovery would require X Corp witnesses to testify under oath. This creates a binary:

**Option 1—admit the sworn Answer was false, X Corp does know how its systems work.** This admission makes the Answer perjurious.

**Option 2—produce witnesses who testify under oath that X Corp genuinely doesn't understand its own platform operations, billing systems, or Terms of Service.** This admission makes X Corp's entire business model legally impossible. How can X Corp enforce Terms it doesn't understand? How can X Corp bill for services it doesn't comprehend? Neither option survives discovery.

The December 3-8 lockout pattern began during appellate briefing. Each time Appellant accesses the platform, Appellant discovers additional evidence: backward-traveling cumulative metrics, billing contradictions, employee account activities, manipulation of advertising campaigns. The strategic solution presents itself with certain clarity: if Appellant cannot access the platform, Appellant cannot discover what X Corp swore it doesn't know about itself. Each day of lockout is a day without new evidence documentation.

C. Geographic Dispersion and Judicial Economy

Fresh post-dismissal violations (December 2-8, 2025) present venue options in Nebraska (Appellant's residence, 28 U.S.C. § 1391(b)(2)), California (Attorney Schwartz's bar jurisdiction for professional conduct review), and this Court (existing appellate review of related underlying claims). Appellant elected to proceed here first. This represents judicial economy: one court, one discovery, one resolution. The alternative—separate proceedings in Nebraska (fresh post-dismissal violations), California (State Bar review of Attorney Schwartz's contradictory sworn statements), and this Court (appellate review)—serves no party's interests and multiplies litigation costs for all involved. Concentrating proceedings before this Court—despite multiple available venue options—reduces burden on all parties and prevents X Corp from facing simultaneous discovery in multiple jurisdictions regarding identical conduct.

D. The Pattern: Published Rules, Selective Enforcement

X Corp publishes 30 pages of Terms of Service explaining what conduct results in suspension. The district court has published rules governing emergency motions, page limits, and procedural requirements. In both forums, Appellant encounters the same phenomenon: published rules exist, but enforcement depends on identity rather than conduct. X Corp processes Schwartz's Sunday 4:42 AM DMCA claim within hours while ignoring Appellant's federal copyright registration for 800 days. The district court dismisses for "tone" while ignoring seven-month-old emergency motions, allows opposing counsel to make false statements on the record without consequence, and declares six-day-old spoliation motions "moot." The pattern is consistent: rules apply to some parties but not others. Misconduct by favored parties goes unaddressed while disfavored parties face consequences for procedural trivialities.

Appellant's experience with this Court thus far has been markedly different. The Fifth Circuit's clerk's office has been professional, courteous, and genuinely helpful—providing clear guidance on procedures and deadlines without the hostility or obstruction encountered in other forums. When Appellant contacted the Court regarding proper filing procedures for this emergency motion, the response was prompt, respectful, and substantive. This professionalism stands in stark contrast to the pattern of selective enforcement and judicial non-response that characterized the district court proceedings. Appellant respectfully submits this motion in the hope that this Court's demonstrated commitment to procedural fairness extends to substantive relief.

The question presented is straightforward: will this Court permit systematic obstruction of evidence gathering during federal appellate proceedings, or will it enforce the principle that litigation occurs in courtrooms rather than through platform lockouts?

## III. LIKELIHOOD OF SUCCESS ON THE MERITS

A. The § 512(g) Violation

17 U.S.C. § 512(g) establishes a Counter-Notice procedure. Once content survives this process—complainant receives Counter-Notice, fails to file lawsuit within 10-14 days, service provider restores content—the content has been adjudicated as non-infringing under the statute. Tweet ID 1992433343091372217 completed this process. X Corp restored it on December 6, 2025—X Corp's own affirmative decision.

On December 7, 2025—one day later—Schwartz re-filed. X Corp removed the identical Tweet ID that X Corp itself had restored 24 hours earlier. Instead of rejecting this as "already adjudicated under § 512(g)," X Corp processed the duplicate claim. This effectively grants Schwartz a permanent injunction without the federal lawsuit required by Congress under 17 U.S.C. § 512(g)(2)(C). The statute does not permit this. Schwartz simply re-filed until it worked.

B. The § 512(f) Violation

17 U.S.C. § 512(f) creates liability for "any person who knowingly materially misrepresents under this section... that material or activity is infringing." Schwartz filed three DMCA claims presenting three different factual theories for the same photographs.

- **November 23, 4:42 AM:** "I took these photographs."
- **November 23, 7:04 AM:** "attempting to monetize... sale of legal services."
- **December 7:** "holds themselves out to be a law firm."

All three cannot constitute the true basis for the DMCA claims. At least two sworn statements are necessarily false. Possibly all three.

Appellant's account displays "@ProSeSelfHelp" and "[www.SelfLegalAid.com](www.SelfLegalAid.com)." The terms "pro se," "self," "aid," and "help" traditionally connote non-attorney self-help assistance rather than professional legal services. Attorney Schwartz, despite seven months of practice, swore under penalty of perjury that these terms indicate Appellant "holds [himself] out to be a law firm" and is "providing legal services." This sworn characterization presents certain interpretive questions about Attorney Schwartz's understanding of legal terminology.

C. The Section 230 Good Faith Requirement

47 U.S.C. § 230(c)(2) provides immunity for actions taken "in good faith" to restrict access to objectionable material. The statute's plain language requires good faith. X Corp's Terms of Service reserve the right to suspend accounts "at any time for any reason." These two positions create a certain tension.

X Corp cannot simultaneously claim: (1) immunity under Section 230 for good faith content moderation pursuant to its published policies, and (2) the contractual right to act arbitrarily without regard to those policies. If X Corp acts pursuant to its 30 pages of detailed Terms of Service, the good faith requirement applies. If X Corp acts arbitrarily "for any reason," that is not good faith content moderation—that is the exercise of contractual discretion, which carries no statutory immunity.

The documented conduct is not good faith: processing DMCA claims from a complainant who filed three contradictory sworn statements; refusing Counter-Notice methods accepted two weeks earlier for identical content; reversing X Corp's own adjudication within 24 hours based on a re-filing from the same complainant; running daily suspension cycles that restore then immediately re-suspend; ignoring federal copyright registration for 800 days while processing Sunday 4:42 AM filings within hours. This is selective enforcement based on who is filing, not what is being filed. Section 230 does not immunize selective enforcement during federal litigation.

X Corp's Terms of Service create user expectations through 30 pages of detailed rules explaining what conduct will result in suspension. The vast majority of users who comply with these rules will never encounter arbitrary enforcement. The users who do encounter arbitrary enforcement share a common characteristic: they have rubbed the corporation the wrong way. This is not good faith. This is retaliation dressed in contractual language.

No physical venue could operate this way. A concert hall cannot permit an impersonator to claim someone else's identity for 800 days because management likes that impersonator. A community garden cannot evict a member who cultivated tomatoes for years because management's preferences changed. Being online does not suspend the laws of fraud and misrepresentation. An impersonator using someone's federally registered copyrighted photograph to claim that person's identity is fraud whether it occurs on a street corner or a social media platform. X Corp's platform status does not transform fraud into protected editorial discretion.

D. Obstruction of Justice Under 18 U.S.C. § 1503

18 U.S.C. § 1503 prohibits conduct that "corruptly... influences, obstructs, or impedes... the due administration of justice." X Corp is the defendant in federal appellate proceedings. X Corp is systematically locking Appellant out during appellate briefing. X Corp is using reports from an attorney who filed contradictory sworn statements. X Corp is creating suspension cycles—restore, immediately re-suspend, restore, immediately re-suspend. X Corp is preventing Appellant from accessing evidence located on Appellee's platform. The systematic nature suggests coordination rather than customer service dysfunction.

The correlation between litigation events and enforcement changes exceeds what probability would predict through coincidence:

- **October 27, 2025:** Texas district court dismissal.
- **December 3, 2025:** Daily systematic lockouts begin.
- **December 6, 2025:** X Corp restores content pursuant to § 512(g).
- **December 7, 2025:** Schwartz re-files; X Corp reverses its own decision within 24 hours.
- **December 8, 2025:** CM/ECF access granted; twelve simultaneous notifications; Counter-Notice method refused.

E. Conspiracy Under 18 U.S.C. § 371

Schwartz files DMCA claims containing contradictory sworn statements. X Corp processes these claims despite restoring the account each time, demonstrating the reports lack merit. X Corp processes these claims despite having already adjudicated this content as non-infringing on December 6, 2025—and having restored it based on that adjudication. X Corp processes these claims despite observing the daily pattern during federal litigation. X Corp processes these claims despite seeing contradictory factual theories from the same complainant. The coordination is demonstrated through pattern and timing rather than explicit agreement. Schwartz files. X Corp processes knowing the reports lack merit. The pattern continues daily during federal appellate proceedings. The effect is systematic prevention of Appellant's evidence gathering.

# IV. IRREPARABLE HARM

Appellant is locked out of X Corp's platform during appellate briefing before this Court. Appellant cannot document ongoing violations, monitor account activity, gather evidence for remand, or preserve real-time platform conduct. The platform is both defendant and evidence source. Each day of continued lockout during appellate proceedings generates additional post-dismissal conduct. The October 27 dismissal date serves as a temporal divider: conduct after that date presents independent claims with nationwide venue options under 28 U.S.C. § 1391(b). Appellant's current lockout falls entirely in the post-dismissal period.

## V. THE KNOWLEDGE PARADOX: JUDICIAL ESTOPPEL

X Corp cannot oppose this motion without contradicting its own sworn Answer in the District Court (Case 1:25-cv-00073-ADA, Dkt. 52, filed July 25, 2025). X Corp swore under penalty of perjury—47 separate times—that it "lacks knowledge or information sufficient to admit or deny" allegations concerning its own platform operations, billing systems, document authentication processes, and Terms of Service enforcement. The Court is invited to review the Answer in its entirety, though a representative sample follows.

The logical problem presents itself with stark clarity: X Corp must now claim sufficient operational knowledge to justify opposing emergency relief regarding platform actions, while having previously sworn it lacks knowledge of those same operations. One cannot simultaneously be too ignorant to admit how one's own billing system works yet sophisticated enough to explain why emergency relief regarding that billing system should be denied.

The following table presents selected excerpts. Each entry represents sworn testimony under penalty of perjury:

OPERATIONAL KNOWLEDGE REQUIRED TO OPPOSE THIS MOTION vs. SWORN IGNORANCE IN DISTRICT COURT ANSWER

**DMCA PROCESSING & COPYRIGHT RECOGNITION:**

- **Operational Knowledge Required:** X Corp claims authority to process Attorney Schwartz's DMCA takedown, authenticate his claim, and lock Appellant's account for "copyright violations." This requires knowledge of copyright procedures, authentication standards, and enforcement protocols.
- **Sworn Statement (Dkt. 52):** Paragraph 9: "X Corp. lacks knowledge or information sufficient to admit or deny Plaintiff's allegation about his alleged 'ownership of a valid registered copyright in a personal photograph depicting himself and his wife.'" (Dkt. 52 at 6)
- **The Logical Impossibility:** If X Corp lacks sufficient knowledge to recognize whether Appellant owns a federally registered copyright—despite Appellant providing Copyright Registration Certificate VAu 1-519-728 and government-issued identification—how does X Corp suddenly possess the sophisticated knowledge necessary to authenticate Attorney Schwartz's unverified Sunday morning email and determine it warrants immediate enforcement? Either X Corp knows how to evaluate copyright claims or it

doesn't. It cannot be an expert when processing claims against Appellant and ignorant when processing claims by Appellant.

**BILLING, CHARGES & MONETIZATION:**

- **Operational Knowledge Required:** X Corp enforces a suspension based on Attorney Schwartz's sworn claim that Appellant is "attempting to monetize their X account in connection with the sale of legal services without permission." (LEGAL-1745113, Nov. 23, 2025, 7:04 AM). This enforcement decision requires X Corp to know: (a) whether Appellant's account has monetization features enabled, (b) whether Appellant is generating revenue, (c) what Appellant is being charged, and (d) whether those charges relate to advertising or business services.
- **Sworn Statement (Dkt. 52):** Paragraph 15: "X Corp. lacks knowledge of information sufficient to admit or deny the allegations about alleged charges in paragraph 15 of the FAC, and on that basis denies those allegations." (Dkt. 52 at 7)
- **The Logical Impossibility:** X Corp swore under penalty of perjury that it does not know about the charges on Appellant's own account. X Corp cannot now claim Appellant is "monetizing" the account to justify enforcement action. To determine whether someone is monetizing, one must first know whether charges exist, what those charges are, and whether revenue is being generated. X Corp swore it lacks this knowledge. Enforcing a "monetization" violation while simultaneously claiming ignorance of the billing status is a logical impossibility—unless X Corp committed perjury in one of these two sworn statements.

**PLATFORM OPERATIONS & TECHNICAL SYSTEMS:**

- **Operational Knowledge Required:** X Corp is actively executing technical operations: triggering account verification challenges, generating suspension notices, processing appeals, issuing twelve simultaneous notifications with identical timestamps, implementing systematic lockout cycles, and coordinating these actions with litigation events. This requires sophisticated knowledge of platform architecture, automated systems, user behavior monitoring, and enforcement mechanisms.
- **Sworn Statement (Dkt. 52):** Paragraph 8: X Corp "admits only that its principal place of business is located in Texas and that it operates a social media platform and denies the remainder of the allegations in this paragraph." (Dkt. 52 at 3) (emphasis added)
- **The Logical Impossibility:** X Corp admitted only that it "operates a social media platform"—the equivalent of admitting "we own a building"—while denying all specific allegations about how that platform functions, how enforcement works, how technical systems operate, or how decisions are made. One cannot simultaneously: (a) execute sophisticated coordinated technical operations with surgical precision, and (b) lack knowledge of how those technical operations work. If X Corp genuinely lacks knowledge of its platform operations beyond "we operate a social media platform," then X Corp cannot explain how or why Appellant's account was suspended, what systems generated the suspension, who authorized it, or on what basis. Yet to oppose emergency relief, X Corp must claim it knows exactly these things.

**DOCUMENT AUTHENTICATION:**

- **Operational Knowledge Required:** X Corp processed Attorney Schwartz's DMCA notices (November 23, 4:42 AM; November 23, 7:04 AM; December 7, 2025) within hours, accepting the documents as authentic and acting on them immediately. This required X Corp to: (a) authenticate the sender's identity, (b) verify the sender's claimed copyright ownership, (c) evaluate the legal sufficiency of the claims, and (d) determine the documents warranted enforcement action.

- **Sworn Statement (Dkt. 52):** Paragraphs 10-24: X Corp repeatedly stated it "lacks knowledge or information about the authenticity of the referenced document sufficient to admit or deny the allegations about the alleged content of the document," and "on that basis denies those allegations." This language appears in response to Appellant's submission of: DMCA notices, Copyright Office certificates, Government-issued identification, Platform screenshots, Account documentation, Evidence compilations, and Federal registration certificates. (Dkt. 52 at 6-9)

- **The Logical Impossibility:** X Corp claimed it could not authenticate Appellant's federal Copyright Office certificate (an official government document with a registration number, federal seal, and Copyright Office verification)—stating it lacked "knowledge or information about the authenticity" sufficient to admit the document's contents. Yet X Corp authenticated and immediately acted upon Attorney Schwartz's email containing no registration number, no government seal, no Copyright Office verification, and three contradictory factual theories. X Corp's authentication standards apparently operate on a sliding scale: official federal documents from litigants require unknowable levels of verification, while Sunday morning emails from attorneys with virtual mailboxes require no verification at all. This is not an authentication protocol. This is selective enforcement.

**TERMS OF SERVICE & POLICY ENFORCEMENT:**

- **Operational Knowledge Required:** To oppose this motion, X Corp must explain what Terms of Service provisions authorize the suspension, how those provisions were violated, why enforcement was appropriate, and how the enforcement comports with X Corp's stated policies. This requires knowledge of: (a) what the Terms of Service say, (b) how they are interpreted, (c) how they are applied, and (d) what standards govern enforcement decisions.

- **Sworn Statement (Dkt. 52):** Paragraphs 8A-8N (spanning "Anticipated Defenses" and "Systemic Implications"): X Corp responded to detailed allegations about Terms of Service enforcement, Section 230 immunity, content moderation policies, and platform practices with: "contains legal conclusions to which no response is required. To the extent a response is deemed required, X Corp. denies the allegations in this paragraph." This formulation appears 14 times in succession. (Dkt. 52 at 3-5)

- **The Logical Impossibility:** X Corp denied—without explanation or detail—all specific allegations about how its Terms of Service operate, how policies are enforced, what standards govern decisions, or how moderation works. Having denied knowledge of these operational details, X Corp cannot now claim those same operational details justify its opposition to emergency relief. If X Corp doesn't know how its Terms of Service are

enforced (as sworn in the Answer), X Corp cannot explain why this particular enforcement decision was proper (as required for opposition).

The pattern is consistent across all 47 instances: when asked to admit how its own systems work, X Corp claims ignorance. When asked to stop using those systems to obstruct a federal litigant, X Corp will claim expertise. This is the "Schrödinger's Platform Operator" defense: simultaneously too ignorant to be held accountable and too sophisticated to be stopped. The legal doctrine preventing this maneuver is judicial estoppel. A party cannot take one sworn position to achieve dismissal in district court, then take the opposite sworn position to oppose relief in appellate proceedings. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position").

X Corp's Answer strategy was transparent: admit nothing, deny everything, claim ignorance of all operational details, and hope for dismissal before discovery could compel actual testimony. The strategy succeeded—the district court dismissed on October 27, 2025, before X Corp witnesses faced deposition regarding the 47 claims of ignorance. But the strategy's success in district court does not grant X Corp license to abandon those sworn positions now that opposition requires claiming the opposite.

The Court faces a binary choice:

**OPTION 1: X Corp's Answer was truthful.**

X Corp genuinely lacks knowledge of its billing systems, platform operations, document authentication procedures, DMCA processing, Terms of Service enforcement, and technical architecture. In this scenario, X Corp cannot explain how Appellant's suspension occurred, what systems executed it, who authorized it, or why it was proper. X Corp's opposition brief would necessarily consist of: "We oppose relief, though we do not know why Appellant was suspended, how the suspension was implemented, what policies govern suspensions, or whether the suspension was proper, as we have sworn under penalty of perjury that we lack knowledge of these matters." Such an opposition would be frivolous.

**OPTION 2: X Corp's Answer was false.**

X Corp does know how its systems work—it knows exactly how billing operates, how suspensions are triggered, how DMCA claims are processed, and how enforcement decisions are made. X Corp claimed ignorance to avoid discovery and accountability. In this scenario, X Corp committed perjury in 47 separate sworn statements in federal court. There is no Option 3 where X Corp was truthful then and is also credible now.

The timing is noteworthy: X Corp's suspension actions intensified immediately after the district court dismissed the case (October 27, 2025), suggesting X Corp interpreted the dismissal as license to act without constraint. The systematic lockout pattern (December 3-8, 2025) began

during appellate briefing. X Corp's opposition to emergency relief requires claiming operational knowledge X Corp swore it does not possess. The contradiction is not subtle.

One final observation: X Corp's Answer denied knowledge of "alleged charges" on Appellant's account (¶15), yet X Corp is now enforcing a suspension based on the claim that Appellant is "monetizing" the account. To determine whether an account is monetized, one must first know whether charges exist. X Corp swore it doesn't know whether charges exist. X Corp is therefore enforcing a "monetization" violation based on information X Corp swore it does not possess. This is not an evidentiary dispute. This is a logical impossibility.

The Court need not take Appellant's word for any of this. The Court may simply read X Corp's sworn Answer (Dkt. 52) and compare it to whatever X Corp files in opposition to this motion. The contradictions will demonstrate themselves.

## VI. THE MONETIZATION IMPOSSIBILITY: PROOF OF BAD FAITH

X Corp's enforcement of Attorney Schwartz's DMCA takedown—premised on the claim that Appellant is "attempting to monetize their X account in connection with the sale of legal services"—constitutes objective bad faith because X Corp's own internal systems prove this allegation is factually impossible. This is not a case where X Corp believed an accusation and later discovered it was false. This is a case where X Corp enforced an accusation X Corp knew was false at the time of enforcement because X Corp itself had made the accusation impossible.

A. The Claim X Corp Chose to Enforce

Attorney Schwartz's November 23, 2025, 7:04 AM DMCA notice (LEGAL-1745113) stated under penalty of perjury:

"This photo is being misappropriated without legal justification or excuse by a user attempting to monetize their X account in connection with the sale of legal services without permission of the copyright holder."

X Corp accepted this claim. X Corp processed this claim. X Corp removed content based on this claim. X Corp suspended Appellant's account based on this claim. X Corp did all of this despite knowing—through its own internal systems—that the claim was false.

B. X Corp's Knowledge of Impossibility

If X Corp has disabled Appellant's ability to monetize the account, then X Corp possesses affirmative knowledge—through its own administrative systems—that Appellant cannot be "attempting to monetize" the account. One cannot attempt to do what has been rendered impossible. The scenarios are limited:

- **SCENARIO 1:** X Corp disabled Appellant's monetization features at some point prior to November 23, 2025. In this scenario, X Corp knew when processing Schwartz's

November 23 claim that Appellant could not be monetizing because X Corp had disabled those features. X Corp therefore knowingly enforced a false claim.

- **SCENARIO 2:** X Corp never enabled monetization features on Appellant's account. In this scenario, X Corp knew when processing Schwartz's claim that Appellant had no monetization capability. X Corp therefore knowingly enforced a false claim.
- **SCENARIO 3:** X Corp enabled monetization features and Appellant was actively monetizing. In this scenario, X Corp knew Appellant's billing and revenue status—which directly contradicts X Corp's sworn statement in Paragraph 15 of its Answer that it "lacks knowledge of information sufficient to admit or deny the allegations about alleged charges." If X Corp knew Appellant was monetizing, X Corp committed perjury in its Answer. If X Corp didn't know whether Appellant was monetizing, X Corp had no basis to enforce Schwartz's claim.

There is no Scenario 4 where X Corp both: (a) acted in good faith when accepting Schwartz's "monetization" claim, and (b) told the truth in its Answer about lacking knowledge of Appellant's billing status.

## C. The Judicial Estoppel Trap

X Corp now faces an impossible choice in its opposition brief:

- **OPTION A:** X Corp argues "We suspended Appellant because our systems confirmed he was monetizing the account." This admission proves X Corp committed perjury in Paragraph 15 of its Answer, where X Corp swore it "lacks knowledge of information sufficient to admit or deny the allegations about alleged charges." One cannot simultaneously lack knowledge of whether charges exist and possess knowledge that monetization is occurring. Monetization requires charges. If X Corp knows about monetization, X Corp knows about charges. The Answer was therefore false.
- **OPTION B:** X Corp argues "We don't monitor billing status; we just accepted Schwartz's claim without verification." This admission proves X Corp violated 17 U.S.C. § 512(c)(3)'s good faith requirement and acted with reckless disregard for truth. Service providers claiming DMCA safe harbor must not "willfully blind" themselves to obvious falsity. *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012). If X Corp possesses internal systems showing whether accounts are monetized but chose not to check those systems before enforcing a "monetization" claim, that is willful blindness—which strips DMCA immunity.
- **OPTION C:** X Corp argues "We disabled his monetization features, so the 'attempting to monetize' claim refers to intent rather than capability." This admission proves X Corp knowingly enforced a claim it knew was factually impossible, which is bad faith by definition. It also proves X Corp's suspension was pretextual—X Corp used a false copyright claim as cover for silencing a litigant. And it raises the question: if X Corp disabled monetization features, when did X Corp do this, and was it done in retaliation for litigation? If so, that's a separate violation.

## D. The "Impossible Crime" Principle

The law does not punish impossible attempts. One cannot be convicted of stealing a balloon from a store where all balloons are locked in a vault beyond customer access. The physical impossibility negates the attempt.

Similarly, one cannot "misappropriate for monetization purposes" content on a platform where the platform operator has disabled monetization. If X Corp disabled Appellant's monetization features, then Appellant's use of any content—regardless of copyright status—cannot be "for monetization purposes" because monetization has been rendered impossible by X Corp itself. X Corp is therefore enforcing a violation that X Corp's own actions made impossible. This is not copyright enforcement. This is using copyright as a pretext to punish a litigant for litigation-related speech.

E. The Temporal Correlation

The timing is noteworthy:

- **August 19, 2025:** Appellant files emergency motion in district court documenting Attorney Schwartz's harassment campaign using Appellant's federally copyrighted photograph. District court does not address motion.
- **October 27, 2025:** District court dismisses case. No ruling on August 19 emergency motion (now 69 days old).
- **November 23, 2025:** Attorney Schwartz files three DMCA notices in five hours presenting contradictory factual theories. X Corp processes all three immediately.
- **December 3-8, 2025:** Systematic daily lockout pattern begins. Each restoration is followed within hours by new suspension based on new Schwartz report.
- **December 8, 2025:** Appellant granted CM/ECF access to file in Fifth Circuit. Same day: twelve simultaneous notifications from Schwartz, all bearing identical timestamp "38m."

The correlation between litigation events and enforcement escalation exceeds what probability would predict through coincidence. The pattern suggests coordination: Schwartz harasses, district court ignores emergency motion, case gets dismissed, harassment escalates, X Corp processes all reports immediately, systematic lockouts begin during appellate briefing.

F. The Bad Faith Inference

When X Corp enforces a "monetization" claim without checking its own systems to verify whether monetization is occurring, one of two things is true:

1. X Corp doesn't have systems to monitor monetization (which would be remarkable for a company processing millions in advertising revenue), or
2. X Corp has those systems but chose not to use them.

If (1): X Corp is incompetent to operate an advertising platform and cannot claim DMCA safe harbor for enforcement decisions about monetization it cannot monitor.

If (2): X Corp's decision not to check is willful blindness, proving bad faith and stripping DMCA immunity.

Either way, X Corp's enforcement fails. But the Court need not speculate about which scenario applies, because X Corp's Answer already provides the answer: X Corp swore it "lacks knowledge of information sufficient to admit or deny the allegations about alleged charges" (¶15). X Corp is therefore proceeding under scenario (1)—claiming it cannot monitor billing. Having sworn to that position under penalty of perjury, X Corp cannot now claim scenario (2) (we chose not to check) without admitting the Answer was false.

G. The Pretext Becomes Obvious

If Appellant's account was actually monetized, X Corp would have simply stated: "Account was monetized; suspension was proper." X Corp has not stated this. X Corp instead claimed ignorance in its Answer, then enforced a "monetization" claim anyway. The sequence reveals the pretext:

1. X Corp wants to suspend Appellant (for litigation-related speech).
1. X Corp cannot suspend Appellant for litigation-related speech (First Amendment).
1. Attorney Schwartz provides pretext: copyright claim mentioning "monetization."
1. X Corp enforces the pretext without checking whether it's true.
1. When confronted in litigation, X Corp claims ignorance of the facts necessary to verify the pretext.

This is not content moderation in good faith. This is retaliation using copyright as cover.

H. Conclusion on Monetization Impossibility

X Corp enforced an accusation that X Corp's own systems could verify or falsify within seconds. X Corp chose not to verify. When challenged under oath in federal court, X Corp swore it lacks knowledge of the facts necessary for verification. X Corp now opposes emergency relief, which requires claiming knowledge X Corp swore it doesn't possess. The contradiction is not a technicality. It is proof of bad faith.

No party acting in good faith would:

● Accept a "monetization" accusation without checking its own monetization systems,
● Swear under penalty of perjury it lacks knowledge of billing/charges,
● Then oppose relief based on the validity of a "monetization" claim, while
● Still maintaining it doesn't know whether monetization is occurring.

This is the "Schrödinger's Monetization" theory: the account is simultaneously monetized (for enforcement purposes) and unknown-if-monetized (for liability purposes) until a court observes X Corp's opposition brief, at which point the waveform collapses into whichever position is more convenient. The law does not permit this. Judicial estoppel prevents parties from claiming ignorance for immunity and knowledge for enforcement. X Corp must choose: either it knows

about billing (proving the Answer was false), or it doesn't know about billing (proving the suspension was baseless). It cannot be both.

## VII. BALANCE OF EQUITIES AND PUBLIC INTEREST

**Harm to Appellant if relief denied:** Unable to gather evidence during federal appellate proceedings. Locked out daily during briefing period via suspension cycles. Cannot document ongoing violations or build record for remand. Evidence degrades or disappears while lockouts continue. Systematic obstruction continues throughout appellate process. Each day generates fresh post-dismissal violations requiring separate litigation.

**Harm to X Corp if relief granted:** Must restore account X Corp already repeatedly restores before re-suspending. Must stop processing reports from Schwartz who filed contradictory sworn statements. Must preserve evidence, which is a standard litigation obligation. X Corp's harm consists of being required to stop obstructing federal appellate proceedings.

**Public interest:** Preventing obstruction of justice during federal appeals. Ensuring party-witnesses can access evidence during litigation. Stopping systematic abuse of DMCA as harassment mechanism during federal proceedings. Deterring platform retaliation against litigants exercising appellate rights. Establishing that contradictory sworn statements in DMCA claims have consequences. Clarifying that "good faith" under Section 230 means something. Clarifying that federal copyright registration with government identification warrants at least equal processing as an attorney's unsupported claims filed at 4:42 AM on Sunday morning.

## VIII. RELIEF REQUESTED

### A. Restore Account Access (Within 24 Hours)

- Unlock Appellant's account
- Remove all suspensions related to Schwartz's reports
- Provide written confirmation of restoration
- Process future Counter-Notices via email (the method previously accepted November 23)

### B. Cease Processing False Reports from Attorney Schwartz

- Reject all future reports from Brandon Schwartz, who filed contradictory sworn statements in DMCA affidavits under penalty of perjury, unprompted, purely to attack a federal litigant
- Reject any DMCA claims on content already adjudicated through December 6, 2025 Counter-Notice process absent court order establishing infringement
- Accept Counter-Notices via email as X Corp did on November 23, 2025

### C. Preserve All Evidence

- All suspension records (December 2024-present)
- All reports and affidavits from Schwartz (including November 23, 4:42 AM, November 23, 7:04 AM, and December 7 versions)
- All notification system logs (particularly December 8 incident)
- All emails regarding suspension decisions
- All records comparing November 23 treatment versus December 7 treatment
- All records of selective enforcement decisions (which images removed versus which images retained)
- All records documenting X Corp's December 6, 2025 restoration decision and December 7, 2025 reversal
- All records of October 13-17, 2025 systematic three-stage data erasure of employee accounts
- All previously requested information

## D. Show Cause (Within 7 Days)

X Corp must show cause why:

- Systematic lockouts during federal appellate proceedings do not constitute obstruction of justice under 18 U.S.C. § 1503
- Processing reports from Schwartz after he filed contradictory sworn statements in DMCA affidavits is appropriate
- Counter-Notice acceptance method changed (email accepted November 23, email refused December 7) for same content, same complainant, during same ongoing dispute
- Reversing X Corp's own December 6, 2025 adjudication within 24 hours based on a re-filing from the same complainant comports with 17 U.S.C. § 512(g)
- Selective enforcement (removing 1 of 4 images while retaining photograph from Schwartz's actual law firm website) does not demonstrate knowledge that content constitutes protected speech
- Daily suspension-restoration cycles during federal appellate briefing do not constitute systematic obstruction
- The conduct documented herein constitutes "good faith" content moderation entitled to Section 230 immunity

## E. Sanctions for Non-Compliance

- Contempt of court for continued obstruction during appellate proceedings
- Daily fines for each day Appellant remains locked out during appellate briefing
- Adverse inference that all evidence Appellant would have gathered during lockout period supports his claims
- Consideration of default judgment if obstruction continues during appellate process

# IX. PROFESSIONAL RESPONSIBILITY CONSIDERATIONS

Attorney Schwartz (California Bar No. 361655) operates from a virtual mailbox in Sacramento. His DMCA filings, made under penalty of perjury in federal proceedings, fall under California State Bar jurisdiction for professional conduct review. The contradictory sworn statements (November 23, 4:42 AM versus November 23, 7:04 AM versus December 7) would support California Bar complaint under Business and Professions Code § 6106 (moral turpitude) should this Court determine the statements constitute knowing false statements under penalty of perjury. Appellant does not request this Court initiate bar proceedings. Appellant notes only that Attorney Schwartz's California Bar license subjects his sworn statements in federal proceedings to state bar professional responsibility review. Whether his contradictory sworn statements warrant such review is a matter for California Bar authorities should they become aware of the filings.

## X. CONCLUSION

Appellant is locked out of X Corp's platform during appellate briefing before this Court. The defendant systematically prevents Appellant from gathering evidence using reports from an attorney who filed three contradictory sworn statements under penalty of perjury in five hours. X Corp restores the account upon appeal, confirming the reports lack merit, then processes the next report from the same attorney. X Corp restores content pursuant to statutory adjudication, then reverses its own decision within 24 hours based on a re-filing. X Corp refuses Counter-Notice methods it accepted two weeks earlier for identical content. The correlation between litigation events and enforcement escalations exceeds coincidental probability.

This is not customer service dysfunction. This is not good faith content moderation. This is documented obstruction of federal appellate proceedings through systematic prevention of evidence gathering by party-witness. The alternative—permitting systematic lockouts during appellate proceedings while defendant controls evidence source—would establish that sophisticated corporate defendants may prevent party-witnesses from gathering evidence during federal appeals through platform control. Such a precedent would have implications extending beyond this individual case. Each day this Court delays, X Corp executes another suspension cycle preventing evidence gathering during federal appellate proceedings. Appellant is locked out now, during briefing before this Court, while evidence continues to degrade or disappear.

## CERTIFICATE OF CONFERENCE

Pursuant to Fifth Circuit Rule 27.4, I certify that I contacted counsel for Appellee, Kenneth Trujillo-Jamison and Norma N. Bennett, via email on December 11, 2025, regarding the relief requested in this motion. Counsel for Appellee stated that X Corp. opposes this motion.

**Appellant's Note on Conference:**

Appellant respectfully notes for the Court that X Corp's opposition is legally irreconcilable with its sworn Answer in the District Court (Dkt. 52), wherein X Corp swore under penalty of perjury—forty-seven separate times—that it "lacks knowledge or information sufficient to admit

or deny" the very operational facts necessary to oppose this motion. By opposing this motion, X Corp is effectively admitting that its prior sworn denials of knowledge were false. Appellant intends to rely on X Corp's opposition brief as further evidence that X Corp possessed operational knowledge it previously concealed from the District Court.

Respectfully submitted,

/s/ Justin Riddle

**JUSTIN RIDDLE**

Pro Se Appellant

16422 Patrick Avenue

Omaha, NE 68116

Tel: (402) 813-2156

Email: justinriddle1@gmail.com December 12, 2025

## VERIFICATION

I, Justin Riddle, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing Opposed Emergency Motion for Immediate Relief Pending Appeal is true and correct based on my personal knowledge, that all facts stated herein occurred as described, and that I have personal knowledge of the matters set forth in this motion.

/s/ Justin Riddle

**Justin Riddle**

Dated: December 12, 2025

## CERTIFICATE OF SERVICE

I certify that on December 11, 2025, the foregoing Opposed Emergency Motion was served electronically via the Court's CM/ECF system on all counsel of record. Due to the emergency nature of this motion regarding ongoing obstruction during appellate proceedings, counsel for Appellee was notified via email and telephone as required by Fifth Circuit Local Rule 27.4.