# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

**Case No. 25-50951**

---

**JUSTIN RIDDLE,**
 *Plaintiff-Appellant*

v.

**X CORP., FORMERLY KNOWN AS TWITTER, INCORPORATED,**
 *Defendant-Appellee*

---

## APPELLANT'S OPPOSITION TO APPELLEE'S MOTION FOR 30-DAY EXTENSION

**Justin Riddle, Pro Se**
 Tel: (402) 813-2156
 Email: justinriddle1@gmail.com

**Date:** January 27, 2026

WHEN AUTHORITY CHOOSES NOT TO ACT

On May 27, 1991, three women found 14-year-old Konerak Sinthasomphone naked, bleeding, and incoherent on a Milwaukee street. They called 911. When police arrived, Jeffrey Dahmer—calm, articulate, and white—told officers the boy was his 19-year-old boyfriend and this was just a lovers' quarrel.

The officers had:

- Three witnesses reporting a child in distress
- A naked, bleeding, drugged teenager who couldn't speak coherently
- Visible signs of trauma
- The authority to investigate

- The authority to take the boy to safety
- The responsibility to protect children

Instead, police believed Dahmer's story, returned the boy to Dahmer's apartment, and left. One officer later joked about needing "delousing" after the encounter. Dahmer murdered Konerak that same night.

**The officers had the power to save him. They chose not to use it.**

**The pattern repeats in different forms:**

**Larry Nassar** (USA Gymnastics): Over 150 young athletes reported sexual abuse to coaches, administrators, and officials starting in the 1990s. Each authority figure who received reports had the power to stop it. Each chose not to act. The abuse continued for decades. Institutional reputation was protected. Victims were not.

**Penn State/Jerry Sandusky**: Multiple staff members witnessed or received reports of child sexual abuse in Penn State facilities over 14 years. Each person who knew had the authority to report to law enforcement or child protective services. Each chose to report internally instead. The institution was protected. Children were not.

**The Pattern That Connects Them:**

These cases share a structure:

1. **Clear evidence of ongoing harm** (witnesses, victims, documentation)
2. **Authority figures with power to stop it** (police, administrators, officials)
3. **Institutional interests that benefit from inaction** (reputation, liability avoidance, resource preservation)
4. **Systematic choice not to act** (not inability—choice)
5. **Harm continues while authority watches** (months, years, decades)

**The year changes. The people change. The specific harm changes. The institutional choice not to act remains constant.**

This case follows the same pattern.

The harm is different (copyright infringement, systematic targeting, evidence destruction, billion-dollar fraud). The authority figures are different (federal judges, magistrates, clerks, corporate attorneys). But the pattern is identical:

1. **Clear evidence of ongoing harm** ✓
2. **Authority figures with power to stop it** ✓
3. **Institutional interests that benefit from inaction** ✓
4. **Systematic choice not to act** ✓
5. **Harm continues while authority watches** ✓

**This Court now faces the same choice those Milwaukee police officers faced:**

Evidence of ongoing harm sits in front of you. You have the authority to stop it. Will you act, or will you grant another extension and let it continue?

The difference between Konerak Sinthasomphone and Justin Riddle is not the pattern. It's that one involved a child's life and the other involves a man's federal rights. But the question is the same:

**When authority has the power to stop documented harm and chooses not to—what do we call that?**

INTRODUCTION: THE CHOCOLATE UMBRELLA PROBLEM

Appellant opposes Appellee's motion for extension, though the Court has already granted it. This opposition serves to preserve the record and to ask for help understanding a pattern that defies logical explanation.

Appellant must confess something: certain aspects of this case make exactly as much sense as manufacturing umbrellas from chocolate. You can make chocolate. You can make umbrellas. But you cannot make chocolate umbrellas because chocolate melts when it rains. [Supplemental Logic Breakdown: https://charterwestbank.com/wp-content/uploads/2026/01/SUPPLEMENTAL-BREAKDOWN-OF-LOGIC-IN-OPPOSITION-TO-APPELLEES-MOTION-FOR-EXTENSION-OF-TIME-TO-FILE-BRIEF-1.pdf]

Similarly, Appellant cannot construct a logical framework where both of these things are true:

1. The evidence overwhelmingly supports Appellant's claims (federal copyright registration, mathematical impossibilities, 800+ days of documented obstruction, real-time targeting during appeal)

2. Every procedural ruling favors X Corp (3 extensions granted, 0 relief to Appellant, dismissal based on tone rather than addressing billion-dollar fraud) [Judicial Interpretation Reference: https://charterwestbank.com/wp-content/uploads/2026/01/Infamous-Court-Decisions-and-Judicial-Interpretati-1.pdf]

One of these must be false. Appellant genuinely cannot identify which one.

THE PATTERN THAT DEMANDS EXPLANATION

Before addressing legal arguments, Appellant respectfully asks the Court to consider the following numbered list. Each item represents a decision where either (a) the evidence pointed

one direction but the ruling went the opposite direction, or (b) identical situations received opposite treatment based solely on which party made the request:

**Evidence vs. Ruling Contradictions:**

1. **Evidence:** Federal copyright registration VAu 1-519-728 (government-issued, presumptively valid) **Ruling:** Dismissed without addressing validity

2. **Evidence:** Third-party filed identical DMCA notice with same registration, content removed immediately **Ruling:** Proves 800-day delay was identity-based targeting **Court action:** Never addressed this mathematical proof of discrimination

3. **Evidence:** Cumulative advertising metrics traveled backward (9,965 to 9,892 impressions) **Ruling:** Dismissed without explaining how cumulative totals decrease

4. **Evidence:** Completion rates exceeded 100% (112.80% completion rate) **Ruling:** Dismissed without addressing mathematical impossibility

5. **Evidence:** X Corp's Motion to Dismiss (March 2025) demonstrated comprehensive operational knowledge **Also Evidence:** X Corp's Answer (July 2025) claimed "lacks knowledge" 47 times about same operations **Ruling:** Both filings accepted; contradiction never questioned

6. **Evidence:** District court found contributory infringement "plausible" (meaning direct infringement likely occurred) **Ruling:** Dismissed underlying direct infringement claim (contributory requires direct) **Logic:** Cannot have contributory infringement without direct infringement (C = D × factors; if D=0, C=0) **Court action:** Never addressed logical impossibility

7. **Evidence:** X Corp fires employees and terminates all access globally within seconds **Also Evidence:** X Corp claimed "technical incapacity" to remove specific URL for 800+ days **Ruling:** Accepted both as true simultaneously

8. **Evidence:** X Corp's AI (Grok) admitted platforms resist removing infringers due to revenue loss **Also Evidence:** Grok explained technical capacity exists but choice is economic **Ruling:** Never addressed these binding admissions against interest

9. **Evidence:** Employee accounts deleted within 15 days of being identified in court filings (October 2025) **Also Evidence:** Posts deleted within hours of being flagged during appeal (January 2026) **Ruling:** Spoliation motions declared "moot"; no sanctions

10. **Evidence:** Appellant disclosed ADHD, requested accommodation for logical consistency barriers **Court Action:** Ignored accommodation request **Also Court Action:** Created exact logical impossibilities Appellant identified as barriers **Ruling:** Cited Appellant's

response to those barriers ("tone") as grounds for dismissal

11. **Evidence:** X Corp invoked both Section 230 immunity ("we're not the speaker") and First Amendment protection ("our editorial choices are protected speech") for identical conduct **Logic:** These are mutually exclusive—cannot be "not the speaker" and "making editorial speech choices" simultaneously **Ruling:** Accepted both theories without addressing contradiction

12. **Evidence:** 17 U.S.C. § 512(g) requires platforms forward counter-notices to copyright holders **Also Evidence:** Zero counter-notices received over 800+ days despite X Corp demonstrating they know this procedure (followed it for Attorney Schwartz) **Ruling:** Never questioned why no counter-notices if infringer was third party

**Procedural Treatment Contradictions:**

13. **Appellant files emergency motion (March 2025):** Ignored for 180+ days **X Corp files extension request (March 2025):** Granted

14. **Appellant files emergency motion (July 2025):** Ignored for 180+ days, then declared "moot" **X Corp files stay request (August 2025):** Granted immediately

15. **Appellant files spoliation motion (October 2025):** Declared "moot" because evidence already destroyed **Logic:** Under this standard, FRCP 37(e) can never be enforced (all evidence destruction is complete when courts address it) **Court action:** Never addressed this problem

16. **Appellant files emergency motion (December 12, 2025):** Court orders X Corp to respond **X Corp responds (December 22, 2025, 9:00 PM):** Court denies Appellant's motion 16 hours later (December 23, 1:00 PM) **Timing:** Ruled 6 days before Appellant's reply was due (December 29) **Result:** Appellant never received opportunity to respond to X Corp's arguments

17. **X Corp files extension request (January 20, 2026):** Granted next day (January 21) **Timing:** No response period provided to Appellant **Result:** Extension granted before Appellant could file opposition

18. **Appellant's opening brief:** Required formal two-page public deficiency letter for missing ROA citations **X Corp's brief:** Resubmitted next day with zero public record of deficiency **Inference:** X Corp received private courtesy correction opportunity; Appellant received public documentation of inadequacy

19. **Appellant's technical deficiencies:** Missing page numbers, citation formatting = brief rejected **X Corp's substantive deficiencies:** 47 false statements under oath = accepted

as legitimate litigation position

20. **District court processed X Corp's 11,400-word brief:** Approximately 5 hours during first business day after Sunday filing **District court claimed:** Additional 2,790 words from Appellant created "undue burden" **Math:** 11,400 words ÷ 5 hours = 2,280 words/hour processing speed; 2,790 additional words = 1.22 hours **Logic:** If Court can process 2,280 words per hour, claiming 2,790 additional words is "undue burden" is mathematically false

21. **Court accuracy for Appellant's filings:** Hypervigilant about page numbers, citation format, technical precision **Court accuracy for X Corp's filings:** Named attorney "Brian Schwartz" instead of "Brandon Schwartz" **Message:** Technical precision matters for Appellant; factual accuracy doesn't matter for Court orders favoring X Corp

22. **Legal standard (Haines v. Kerner):** Pro se filings must be "liberally construed"; focus on substance over form **Actual application:** Appellant held to stricter standard than represented parties; dismissed for formatting while substance (billion-dollar fraud) never reached

23. **District court finding:** Appellant's contributory infringement claim is "plausible" (acknowledging likely ongoing harm) **Court action:** Granted stay letting acknowledged harm continue for months **Stay basis:** Sony v. Cox (ISP case about passive conduits) **Reality:** X Corp is a publisher making active editorial decisions, not a passive conduit **Logic:** Even if Cox rules for defendant, it helps ISPs—not publishers; case is inapplicable **Court action:** Never explained why inapplicable case justifies allowing acknowledged harm to continue

24. **X Corp's requests granted:** 3 for 3 (March extension, August stay, January extension) = 100% success rate **Appellant's requests granted:** 0 for 4 (March emergency, July emergency, October spoliation, December emergency) = 0% success rate **Probability by chance:** $(0.5)^7 = 0.78\%$ (less than 1 in 128) **If expanded to ~20 favorable rulings for X Corp:** $(0.5)^{20} = 0.000095\%$ (approximately 1 in 1,048,576)

25. **Evidence location:** Every piece of documentary proof (forensic logs, screenshots, mathematical impossibilities, federal registration) = favors Appellant **Ruling direction:** Every significant procedural ruling = favors X Corp **Logic:** These cannot both be true under neutral application of law

**The Fundamental Question:**

Appellant has tried for twelve months to identify the neutral legal principle that explains this pattern. When you flip a coin 20+ times and it comes up the same way every single time, either you are the unluckiest person in history (probability: 0.000095%) or the coin is weighted.

**How does every single person whose job is to prevent ongoing harm choose not to prevent it?** How does a district judge find harm "plausible" and then deliberately allow it to continue for months based on an inapplicable case? How does a Fifth Circuit panel see documented evidence destruction during active appeal and respond by granting the evidence-destroyer more time?

Appellant would like someone to explain which neutral principle of law produces these outcomes, because from where Appellant sits, the evidence points one direction and every ruling goes the opposite direction—and that direction is always away from Appellant.

If these outcomes reflect neutral application of law, Appellant genuinely needs that principle explained. If these outcomes reflect different standards for different parties, Appellant needs that stated clearly so expectations can be adjusted accordingly.

Because right now, this looks like a chocolate umbrella: a thing that cannot logically exist, but somehow does.

ARGUMENT

I. THE QUESTIONS ARE BINARY—THIRTY DAYS WON'T CREATE THIRD OPTIONS

X Corp seeks 30 additional days to respond to Appellant's Opening Brief. But additional time cannot resolve logical impossibilities.

The questions presented are binary. Either contributory infringement can exist without direct infringement, or it cannot. Either Section 230 immunity and First Amendment protection are mutually exclusive for identical conduct, or they are not. Either cumulative numbers can travel backward in time, or they cannot.

Thirty days will not change the answers to these questions.

A. The Contributory Infringement Impossibility

Appellant's Opening Brief argues: You cannot have contributory copyright infringement without underlying direct infringement.

Will 30 days change this?

X Corp has only one possible response: "The direct infringer was a third party, not X Corp."

But X Corp cannot make this argument without admitting they violated DMCA procedural requirements:

**Problem 1: No Counter-Notices Were Provided**

Over two years of Appellant's DMCA notices, Appellant never received a single counter-notice from the alleged "third party" infringer. 17 U.S.C. § 512(g) requires platforms to forward

counter-notices to complainants. X Corp demonstrated they know this procedure—they followed it perfectly when Attorney Brandon Schwartz filed DMCA claims against Appellant.

**Problem 2: The 800-Day Protection Pattern**

Why would X Corp expend resources protecting a random user from valid copyright claims backed by federal registration for over two years? Corporations do not protect random third parties. They protect employees.

**Problem 3: The Post-Dismissal Admission**

After dismissal, when a third-party account filed a DMCA notice for the same content using the same copyright registration (VAu 1-519-728), X Corp removed the content immediately. This proves:

- The content was always infringing (X Corp removed it when identity concealed)
- The 800-day delay was identity-based targeting (not technical limitations)
- Every defense X Corp raised for 12 months was false

**The Binary X Corp Cannot Escape:**

If the infringer is a third party: X Corp violated § 512(g) by failing to forward counter-notices and can prove third-party status through discovery

If the infringer is an X Corp employee/contractor: X Corp is the direct infringer through agency, resolving the district court's contradiction

Thirty days does not create a third option.

B. The Section 230/First Amendment Contradiction

Appellant's Opening Brief argues: Section 230 immunity ("we are not the speaker") and First Amendment protection ("our editorial choices are protected speech") are mutually exclusive for identical conduct.

Will 30 days change this?

X Corp stated in their December 22, 2025 Opposition: granting relief "would violate X Corp's immunity from liability under section 230... and the First Amendment."

This is a fatal admission. You cannot simultaneously be:

- "Not the speaker" (Section 230's premise), AND
- "The speaker making expressive editorial choices" (First Amendment's premise)

**The Binary:**

Section 230 "Good Faith" Immunity: "We removed content believing it violated our policies. Even if wrong, we tried in good faith."

First Amendment "Editorial Choice" Protection: "We CHOSE to keep this content because it reflects our editorial judgment."

These are opposite premises. If X Corp removed Appellant's content citing "policy" but kept identical content from the impersonator citing "editorial discretion"—the first removal was not good faith.

Thirty days will not make these compatible.

C. The Mathematical Impossibilities

Appellant documented cumulative advertising metrics traveling backward in time—from 9,965 to 9,892 impressions over 50 minutes during active billing. [Master Ad Metrics Evidence: https://charterwestbank.com/wp-content/uploads/2026/01/RIDDLE-v.-X-CORP-MASTER-AD-METRICS-EVIDENCE-REFERENCE.pdf]

Will 30 days change mathematics?

Cumulative totals do not decrease through natural processes. X Corp has three possible responses:

- "The data is wrong" → Admits billing systems are unreliable, supporting fraud claim
- "The data is accurate" → Admits impossibility occurred, proving manipulation
- "We need to investigate" → After 800+ days of litigation, X Corp still doesn't know how its own billing system works?

Thirty days of investigation will not make cumulative numbers capable of traveling backward.

D. The Quantum Knowledge States

X Corp's Motion to Dismiss (March 5, 2025) demonstrated comprehensive knowledge of its operations. X Corp's Answer (July 25, 2025) claimed to "lack knowledge or information sufficient to admit or deny" 47 times about those same operations.

Will 30 days resolve this perjury trap?

X Corp must choose:

- Demonstrate knowledge in response brief → Proves the 47 "lack knowledge" statements were false under oath
- Maintain ignorance → Cannot contest evidence about billing systems, employee relationships, or operational infrastructure

This is judicial estoppel. New Hampshire v. Maine, 532 U.S. 742, 749 (2001).

**What will X Corp do with 30 days if they truly "lack knowledge" of their own operations?**
They still won't know how their DMCA system works, how their billing works, or who their employees are. If they actually do know (which seems likely for a functioning company), the 47 sworn statements were false—perjury under 18 U.S.C. § 1621.

There is no third option where they genuinely didn't know in July 2025 AND 30 days in January 2026 will somehow teach them.

E. The Employee Termination Benchmark

Appellant's Opening Brief argues: If platforms can terminate employee access globally in seconds (they can and do), claiming "technical incapacity" to remove specific URLs identified in DMCA notices is technical fraud.

When X Corp fires an employee for cause:

- Email deactivated: seconds
- Building access terminated: seconds
- VPN credentials invalidated: seconds
- Internal tools locked: seconds

This happens instantly for security reasons. Yet for 800+ days, X Corp claimed removing the impersonator account was beyond their technical capacity.

**The Binary:**

- Technical capacity exists → The refusal was economic choice, not technical limitation
- Technical capacity doesn't exist → X Corp cannot revoke employee access for security (demonstrably false)

Thirty days will not create technology that makes global access termination possible for employees but impossible for DMCA-identified URLs.

F. X Corp's Own AI Admitted the Economic Choice

On December 24, 2025—while this appeal was pending—X Corp's AI assistant Grok explained to a user:

"ISPs like Cox often resist removing repeat infringers due to revenue loss—those users are paying customers. Strict enforcement also raises costs... In Sony v. Cox, this led to 'willful blindness' claims, prioritizing profits over compliance."

When asked why ISPs don't make the same "revenue loss" argument about CSAM, Grok explained the criminal/civil calculus drives decisions and that technical capacity exists but choice is economic.

X Corp cannot simultaneously claim:

- Grok is reliable when marketing to customers and government agencies
- Grok's statements about X Corp's business practices are unreliable when unfavorable

Either Grok is reliable (binding admissions against X Corp) or unreliable (fraudulent marketing). There is no third option.

II. THE PATTERN APPELLANT STRUGGLES TO UNDERSTAND

Over the past year of litigation, Appellant has observed: When Appellant requests relief, Court waits for X Corp to respond (7+ days), then rules immediately, often before Appellant's reply deadline. When X Corp requests relief, Court rules immediately (often next day) with no response period for Appellant.

**The Extension Timeline:** X Corp filed extension motion January 20, 2026—the exact day Court accepted Appellant's brief as sufficient after requiring ROA citations. If ROA citations prevented response, why wait until the day citations were added to request 30 more days? X Corp's motion cites specific paragraph numbers, demonstrating they analyzed the brief within hours. What will 30 additional days accomplish?

**Statistical Analysis:** X Corp's requests: 3 for 3 (100% success). Appellant's requests: 0 for 4 (0% success). Probability under neutral application: approximately 1 in 1,048,576.

Appellant has tried to identify what legal principle distinguishes these situations and has failed. Perhaps law school teaches this distinction, but Appellant missed that class due to not attending law school.

III. THE REAL PURPOSE: MORE TIME TO DESTROY EVIDENCE

Here's what makes this pattern not just troubling but unconscionable: Every single person involved—judges, clerks, magistrates, attorneys, corporate executives—knows that what's happening constitutes active ongoing harm.

Not one person with the responsibility and authority to stop it has chosen to do so.

**The Restraining Order Comparison:**

Imagine a woman goes to court with photos of slashed tires, text messages with threats, video of stalker banging on her window, and police reports. She asks for a restraining order.

Judge says: "This seems plausible. I'm going to wait for the Supreme Court to decide an unrelated case about property damage before I order him to stop. In the meantime, he can keep slashing your tires. Also, you exceeded the page limit and your tone was harsh, so I'm considering sanctions against you."

This would be a national scandal. But when it's copyright infringement by a billion-dollar corporation against a pro se litigant from Omaha? "Seems plausible. Let it continue for twelve months. Grant the corporation three extensions. Deny the victim all relief."

**The District Court's Acknowledged "Plausible" Harm:**

Before granting the stay, the district court acknowledged that Appellant had stated a plausible claim for contributory copyright infringement. The Court found Appellant's claim plausible—meaning Appellant demonstrated he was likely being harmed.

The Court then granted X Corp's motion to stay proceedings pending Sony v. Cox.

Let's examine what this means: A federal court acknowledged a corporation was plausibly engaged in ongoing copyright infringement. And the Court's response was: "This seems plausible, so we'll let it continue for several more months while we wait to see what the Supreme Court says about telephone companies."

**The Absurdity: Cox Doesn't Apply**

Cox involves an ISP (Internet Service Provider) being held liable for subscriber copyright infringement. ISPs are passive conduits—like telephone companies. X Corp is a publisher that actively moderates content and makes editorial decisions.

These are not the same thing. An ISP and a publisher are as different as a telephone company and a newspaper. Even if the Supreme Court rules for Cox, that would help ISPs—not publishers.

V. THE ADA VIOLATION COURTS WEAPONIZE

Appellant disclosed documented ADHD and requested accommodation for logical consistency barriers. The district court:

- Ignored the accommodation request
- Created the exact logical impossibilities Appellant identified as cognitive barriers
- Cited Appellant's predictable response as "tone" justifying dismissal

42 U.S.C. § 12132 prohibits federal courts from excluding individuals based on disability. This case presents a simple question: Can federal courts deliberately trigger disability responses, then punish those responses as grounds for dismissal?

**What the Court Did:**

1. Appellant disclosed ADHD diagnosis ✓
2. Requested accommodation for logical consistency barriers ✓
3. Court ignored request ✓
4. Court created exact logical impossibilities (contributory without direct) ✓

5. Appellant responded with frustration at logical contradictions ✓
6. Court cited "tone" as basis for dismissal ✓

This is textbook disability discrimination: Request accommodation for disability → Request ignored → Exhibit disability symptoms → Punished for symptoms.

**The Tone Timeline - What Courts Refuse to Acknowledge:**

Appellant's "tone" appeared after months of documented provocation through deliberate logical impossibilities. March 2025: X Corp demonstrated comprehensive operational knowledge. July 2025: X Corp claimed "lacks knowledge" 47 times about the same operations. August 2025: Court found contributory infringement "plausible" then dismissed direct infringement, allowing harm to continue based on inapplicable Cox case with zero explanation.

Appellant didn't invent these contradictions—Appellant responded to them. When Appellant wrote that contributory-without-direct is "logically impossible," that's accurate description, not tone. Zero times anything equals zero. When Appellant called 47 contradictory statements "lies," that's precision—both cannot be true.

**The Causation Problem:** Court creates logical impossibility → refuses to explain → punishes Appellant for noticing. This makes it impossible for self-represented litigants to challenge institutional contradiction, because pointing out contradictions = "tone," expressing frustration = "inappropriate emotion," calling lies "lies" = "rhetorical flourish."

No law requires emotionless presentation, especially when frustration is directed at logical impossibilities after months of unexplained contradictory rulings. Courts routinely accept far more aggressive arguments from represented parties. The difference is those parties have law degrees.

VI. WHAT THIRTY DAYS WILL ACTUALLY ACCOMPLISH

X Corp has litigated these exact claims for over a year. After twelve months, X Corp says they need 30 additional days to respond to arguments they've been responding to for a full year.

Appellant can identify only three logical possibilities:

**Option 1:** X Corp does not understand their own case after twelve months.

- This would suggest incompetence
- X Corp's counsel are clearly sophisticated attorneys
- This seems unlikely

**Option 2:** X Corp cannot defend their position on the merits and needs extensive time to craft arguments.

- This would explain why more time helps

- But would not constitute good cause for extension
- Just means their position is difficult to defend

**Option 3:** The extension serves some purpose other than brief preparation.

- Given documented ongoing evidence destruction during active litigation
- Given the pattern of X Corp receiving three extensions while Appellant receives zero relief
- Given that evidence identified in October was deleted within 15 days
- Given that posts flagged in January were deleted within hours

**The Real Purpose: More Time to Destroy Evidence**

Consider what Appellant has documented:

- October 2025: Employee accounts deleted within 15 days of being identified in court filings
- January 2026: Posts deleted within hours of Appellant identifying them as evidence
- January 2026: Real-time monitoring of Appellant's conversations with platform AI

Pattern: When evidence is identified, it disappears.

Now X Corp gets 30 more days before having to respond. And here's the beautiful part from X Corp's perspective: They've already proven they can get away with it. The district court declared spoliation motions "moot" because dismissal made everything moot.

Translation: "Yes, they destroyed evidence. No, there will be no consequences."

So why wouldn't X Corp destroy more evidence during this 30-day extension? It worked last time.

VII. THE TRUTH REQUIRES NO EXTENDED PREPARATION

Appellant can respond immediately to any argument X Corp raises. The truth does not require 30 days of careful construction.

Appellant has lived this case for over two years. Appellant knows exactly what happened, when it happened, why it happened, and how to prove it. The truth can be stated immediately because it's simply what happened.

**Response Examples (30 seconds each):**

X Corp: "Dismissal for tone was appropriate" Appellant: "You lied 47 times under oath. I called you liars. I was correct. Dismissing truth-telling for being impolite while accepting perjury for being polite inverts justice."

X Corp: "We lack knowledge of our operations"
Appellant: "Your Motion to Dismiss demonstrated comprehensive knowledge. Your Answer claimed ignorance 47 times. Both cannot be true. Pick which one was perjury."

X Corp: "Extensions were appropriate" Appellant: "You got 3-0 on extensions. I got 0-4 on relief. Probability by chance: 0.000095%. Either I'm unluckiest person alive or system is rigged. Math suggests the latter."

If X Corp's position is defensible on the merits, why do they need 30 days to defend it? Truth is immediate. Lies require preparation.

VIII. THE IMPOSSIBLE BRIEF X CORP MUST WRITE

X Corp is not re-litigating this case on the merits. They're defending the district court's decision to dismiss. Which means X Corp's appellate brief must affirmatively argue that the district court was correct to:

**1. Dismiss Based on "Tone" Rather Than Address Billion-Dollar Fraud**

X Corp must argue: "The district court correctly dismissed because Appellant said we were lying, and even though we demonstrably were lying (47 contradictory statements under oath), saying so was inappropriate."

**2. Find Contributory Infringement "Plausible" While Dismissing Direct Infringement**

The mathematical impossibility: Contributory infringement = Direct infringement × (knowledge + contribution). If direct infringement = 0 (dismissed), then contributory = 0 × anything = 0. You cannot multiply by zero and get a positive result. This is fourth-grade math.

X Corp must defend this equation. And they need 30 days to figure out how to argue it.

**3. Defend "Lacks Knowledge" While Demonstrating Knowledge**

X Corp's March Motion to Dismiss demonstrated comprehensive operational knowledge. Their July Answer claimed "lacks knowledge" 47 times about the same operations. X Corp cannot defend dismissal without explaining their operations, but explaining their operations proves the 47 statements were false.

**4. Defend Employee Termination Paradox**

X Corp must argue: "We have sufficient technical sophistication to terminate global employee access instantly, but insufficient technical sophistication to remove single URL when provided federal registration. This disparity is explained by technical limitations, not selective enforcement."

This is another chocolate umbrella.

**5. Defend Evidence Destruction Going Unpunished**

X Corp must defend that October 2025 employee account deletions and January 2026 real-time post deletions don't warrant sanctions, and the Fifth Circuit correctly granted them more time during which evidence destruction continues. Defending evidence destruction as acceptable creates precedent that evidence destruction is acceptable.

IX. THE PRECEDENTIAL STAKES

This Court's decision will create binding precedent regardless of timeline. Future defendants will cite Riddle v. X Corp for whatever framework this Court endorses:

- Can platforms invoke mutually exclusive immunity theories simultaneously?
- Can evidence spoliation be declared "moot" upon completion?
- Can parties swear to contradictory facts as tactically convenient?
- Can technical capacity exist for employee termination but not DMCA compliance?
- Can federal courts weaponize documented disabilities against pro se litigants?
- Can courts acknowledge "plausible" ongoing harm then allow it to continue for months?

Thirty days will not change the answers to these questions. The questions are binary.

X. REQUEST FOR TRANSPARENCY

While Appellant recognizes the Court has already granted X Corp's extension, Appellant respectfully requests that the Court state its reasoning for that decision.

Stated reasoning would serve several purposes:

1. **Precedent:** Establishes standard for future extension requests by either party
2. **Understanding:** Helps Appellant understand what factors the Court considers relevant
3. **Transparency:** Creates record of whether same standards apply to both parties
4. **Appearance:** Addresses perception that extensions are granted based on party resources rather than actual need

Without stated reasoning, Appellant cannot understand:

- Why X Corp's motion received next-day approval while Appellant's emergency motion required a week before denial
- Why X Corp's claimed inability to respond without perfect citations constitutes good cause when X Corp simultaneously demonstrated ability to analyze brief and cite specific paragraphs within hours
- Why attorney workload constitutes good cause for well-resourced law firm
- What principle distinguishes situations where parties receive full briefing opportunities versus situations where Court rules before reply deadlines

If Court applies different standards to institutional defendants versus pro se litigants, Appellant needs to know that to adjust expectations accordingly. If Court applies same standards but these situations genuinely differ in legally significant ways, Appellant would benefit from understanding those distinctions.

Transparency addresses appearance concerns. When every procedural motion breaks the same way—X Corp's motions granted swiftly, Appellant's motions denied after delay—it creates uncomfortable appearance that justice may depend on party resources rather than merits.

CONCLUSION

X Corp's extension request should be denied because:

**Logical impossibilities do not resolve with time.** Either contributory infringement requires underlying direct infringement (it does) or it doesn't. Either Section 230 and First Amendment are mutually exclusive for identical conduct (they are) or they're not. Either cumulative numbers can travel backward (they cannot) or they can.

**X Corp already made fatal admissions.** The December 22, 2025 Opposition invoked both Section 230 immunity and First Amendment protection. X Corp's own AI admitted systematic targeting under confrontation. The post-dismissal third-party removal proved 800 days of identity-based obstruction.

**The evidence is undisputed.** Cumulative metrics traveling backward. 47 contradictory sworn statements. 800-day refusal to remove federally registered infringement. Mathematical impossibilities. Real-time evidence destruction during appeal.

**Every response proves at least one claim.** X Corp is not seeking time to research—X Corp is seeking time to escape perjury traps that have no escape routes:

- Demonstrate operational knowledge → Proves 47 "lack knowledge" statements were perjurious
- Maintain ignorance → Cannot contest evidence about systems they claim not to know
- Admit editorial decisions → Loses Section 230 immunity
- Claim good faith → Cannot invoke First Amendment editorial protection
- Explain backward-traveling numbers [Master Ad Metrics Evidence: https://charterwestbank.com/wp-content/uploads/2026/01/RIDDLE-v.-X-CORP-MASTER-AD-METRICS-EVIDENCE-REFERENCE.pdf] → Admits manipulation or system unreliability
- Identify third-party infringer → Admits § 512(g) violations
- Continue protecting infringer → Proves employee relationship inference

**The questions are binary.** They require position-taking, not investigation. Thirty days will not create third options where none exist.

If this Court believes these issues warrant resolution, oral argument would serve efficiency better than extended briefing schedules. But extending briefing schedules will not change mathematics, logic, or the laws of time.

And it will give X Corp 30 more days to destroy evidence that disappears every time Appellant identifies it.

Respectfully submitted,

/s/ Justin Riddle JUSTIN RIDDLE, Pro Se Appellant Tel: (402) 813-2156 Email: justinriddle1@gmail.com

Date: January 27, 2026