**No. 25-50951**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

JUSTIN RIDDLE,
*Plaintiff-Appellant*

v.

X CORP.,
*Defendant-Appellee.*

**APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS, NO. 1:25-CV-73
(ALBRIGHT, J.)**

**PLAINTIFF-APPELLANT JUSTIN RIDDLE'S OPPOSITION TO
DEFENDANT-APPELLEE X CORP.'S MOTION FOR FILING
RESTRICTIONS OR ALTERNATIVE RELIEF**

Justin Riddle
Plaintiff-Appellant, Pro Se
Omaha, Nebraska

## INTRODUCTION

X Corp. asks this Court to grant a procedural motion against a pro se litigant whose substantive emergency motions remain unaddressed on the same docket. The Court cannot engage X Corp.'s motion substantively without first explaining why X Corp.'s procedural request is reachable on the merits while Riddle's emergency motions documenting evidence destruction—and corroborating his pleaded allegation that an X Corp. employee is the operator of an account that has impersonated him for years—are not. That asymmetry is not a side issue. It is the substance of the appeal.

The motion's actual logic, stripped of citation, is that X Corp.'s ongoing misconduct generated voluminous evidence; that the volume required voluminous filings to preserve; that the filings were emotional because the misconduct was ongoing; and therefore that the litigant should be barred from further filings. That is not a sanctions theory. It is a request for immunity through exhaustion, available only against parties without counsel. It is also a request the Court cannot grant without itself enacting the differential procedural treatment that is the heart of Riddle's appeal.

The motion identifies no filing this Court has declared frivolous on the merits. It identifies no statement constituting a legally cognizable threat. It does not address any of the substantive evidence on appeal. It does not explain why a fully-briefed appeal needs filing restrictions at

all, except to suggest that the appellee would prefer not to receive further notice of its own conduct. The motion's animating proposition is that further documentation by Riddle of the appellee's ongoing conduct would burden this Court more than the conduct itself. The proposition is novel. The motion should be denied.

## I. The Motion Was Filed Four Days After X Corp. Lost a Rule 28(j) Exchange It Initiated.

The procedural sequence immediately preceding the present motion is dispositive of its purpose.

On April 22, 2026, X Corp. filed a Rule 28(j) letter (ECF No. 63) advancing two recent Supreme Court decisions—Cox Communications, Inc. v. Sony Music Entertainment, 146 S. Ct. 959 (Mar. 25, 2026), and Grande Communications Networks v. UMG Recordings, Inc., 2026 WL 922501 (U.S. Apr. 6, 2026)—as supplemental authority X Corp. claimed provided an "independent basis to affirm." X Corp.'s own footnote conceded that the district court "never considered the impact of Cox on Riddle's claim."

On April 23, 2026, Riddle responded in his own Rule 28(j) letter (ECF No. 66), under 350 words. The response established that Cox's intent requirement was satisfied, not defeated, by the contemporaneous record: an account bearing X Corp.'s official @X affiliate designation—the same designation carried by X Corp.'s owner—accessed Riddle's ad campaign backend, manipulated creatives, placed campaigns in non-delivering sandbox status, publicly admitted

taking and cropping Riddle's copyrighted image after Riddle explained on-platform that his added text established copyrightability, and then blocked Riddle on the platform. That conduct supplies the affirmative-acts-evidencing-intent element Cox makes dispositive. X Corp.'s own concession that the district court never considered Cox supplies a basis for remand, not affirmance.

On April 27, 2026—four days later—X Corp. filed the present motion seeking to bar Riddle from further submissions in this appeal.

Two facts about that timing are material. First, Riddle's April 23 response was 350 words and was responsive to a letter X Corp. itself filed; it cannot be characterized as voluminous, vexatious, or unsolicited. Second, with the appeal fully briefed and submitted and the Rule 28(j) exchange concluded, there was no further filing Riddle had any procedural reason to make. The motion is not, on its face, a response to an anticipated pattern of future filings. There was no anticipated pattern. The motion is a response to the operative effect of evidence already on the docket as of April 23.

X Corp. opened the supplemental-authority exchange. X Corp. lost it in 350 words. Four days later, X Corp. moved to close the channel it had itself opened. That is the sequence.

## II. The Motion Asks This Court to Adjudicate X Corp.'s Procedural Request While Riddle's Substantive Emergency Motions Remain Unaddressed.

The present motion is not the only outstanding matter on this docket. Riddle's prior emergency motions—including ECF No. 57, the Emergency Motion Regarding Completed Evidence Destruction, and the subsequent submissions corroborating that the operator of an impersonating account is an X Corp. employee—remain substantively unaddressed. The employee allegation itself is not new. It was pleaded in the operative complaint and presented to the district court before dismissal. The case was dismissed for procedural reasons without engaging the allegation on the merits. The post-dismissal development is the named operator's own on-platform admission confirming what was already pleaded below. The Court has either taken no action on Riddle's submissions on these matters or denied them without engaging their substance. The 14-day response window on Riddle's emergency motion concerning evidence destruction ran without resolution. X Corp.'s April 22 Rule 28(j) letter appeared in the immediate aftermath of that window, addressing a different subject.

Riddle does not, in this opposition, seek a ruling on those prior emergency motions. He observes only that they are pending. The observation is necessary because the Court cannot grant X Corp.'s present motion without first engaging it on the merits, and engaging X Corp.'s procedural motion on the merits—while Riddle's substantive emergency motions about evidence destruction and employee impersonation sit unaddressed—would itself constitute the differential treatment of represented and pro se parties that is at issue on appeal.

Riddle does not suggest the Court would do this knowingly. He notes only that the docket, as currently postured, makes any substantive engagement with X Corp.'s motion conditional on a prior choice about the order in which pending matters are reached. The cleanest course is the one that does not require that choice to be visibly asymmetric: denial of the present motion.

Riddle does not, by raising the unaddressed status of his prior emergency motions, request expedited resolution of those motions in this opposition. He observes the following only. A motion captioned as an emergency, concerning evidence destruction, is by the plain meaning of the word a matter requiring expedited consideration—because the consequence of delay is the loss of the evidence itself. The Court's options on such a motion are to engage it on its terms, to deny it on grounds explaining why it does not meet the definition, or to leave it unaddressed. The third option is not a procedural posture. It is a determination, made by inaction, that the matter neither warrants engagement nor warrants explanation of why it does not. X Corp.'s response to Riddle's emergency motions has paralleled the Court's: silence in the face of substance, accompanied now by a procedural motion arguing that further substance should not be filed. The Court is, of course, free to determine that none of Riddle's emergency motions warranted engagement on their own terms. It has not made that determination on the record. Until it does, the procedural posture of the present motion—an appellee's request to be relieved of the obligation to

respond to allegations it has not yet responded to—asks the Court to ratify silence as substantive answer.

## III. The Motion Identifies No Frivolous Filing and No Legally Cognizable Threat.

Filing restrictions under Baum v. Blue Moon Ventures, LLC, 513 F.3d 181 (5th Cir. 2008), and Farguson v. MBank Houston, N.A., 808 F.2d 358 (5th Cir. 1986), are reserved for vexatious, abusive, and harassing litigation defined by frivolousness on the merits. The cases X Corp. cites all involve litigants who repeatedly filed claims that had been finally adjudicated against them, or claims with no arguable legal basis. None involve a litigant who prevailed unanimously at the highest court of another jurisdiction, pro se, on a related novel question of law, and whose underlying federal claims include first-impression issues under the DMCA, Section 230, and platform-fraud theories not previously addressed by this Court in this posture.

The motion does not allege, and could not allege, that any of Riddle's filings in this appeal have been declared frivolous on the merits. The Court's docket entries it cites—ECF Nos. 19-2, 23-2, 31-2, 39-2, 48-2, 48-5, 50-2—identify formatting deficiencies, word-count overages, and incorrect docket-event selections. These are pro se procedural errors. They are not frivolousness. The Fifth Circuit routinely accepts amended filings from represented parties for identical errors without characterizing those parties as abusive. The asymmetry between how represented parties' deficient filings are handled and how

a pro se litigant's deficient filings are now being recharacterized as evidence of abuse is itself worth noting.

Riddle's emergency motions concerning post-dismissal conduct (ECF Nos. 14, 20, 49, 57) raised matters this Court necessarily had to be informed of, because they occurred after the district court lost jurisdiction. Spoliation of evidence during the pendency of an appeal cannot be raised below. It can only be raised here. X Corp.'s position—that such matters are "outside the appellate record" and therefore improper—presents the litigant with a closed loop: the conduct cannot be raised below because it occurred after dismissal, and cannot be raised here because it was not raised below. That is not a procedural rule. It is a structural license for evidence destruction during appeal, available to any appellee willing to use it.

The motion's threat allegations are similarly empty. Stating an intention to file a motion for sanctions, a petition for writ of mandamus, a motion for recusal, or a complaint with judicial conduct authorities is not a threat. These are enumerated procedural rights that exist precisely to be invoked. A pro se litigant's announcement that he intends to invoke them differs from a represented litigant's identical announcement only in the absence of a billing rate.

The April 3, 2026 email is the motion's strongest factual hook, and the motion handles it by quoting two words. "Destroy," in correspondence to opposing counsel about a pending appeal, is a term of legal art for defeating an opposing party's position. "Not ever stop"

describes continued prosecution of claims. Neither expression communicates any intent to inflict physical or unlawful harm. Counsel's affidavit does not assert that Riddle threatened any such harm, because Riddle did not. The motion's rhetorical strategy depends on isolating the email from the conduct that produced it: roughly three years of identity impersonation by accounts X Corp. refused to remove; the on-platform admission by the named X Corp. employee whose impersonating conduct Riddle pleaded in the operative complaint; three documented stages of evidence destruction by X Corp.; and an email sent to attorneys whose client was actively continuing the impersonation. The motion's characterizations of the email's register are X Corp.'s; Riddle does not contest them and does not reproduce them.

The motion's narrowing of its attack to tone is itself analytically significant. A litigant whose filings could be dismissed as frivolous would be dismissed as frivolous. A litigant whose claims could be defeated on standing, jurisdiction, or pleading sufficiency would face those motions. When the residual attack surface is tone—after the merits-based defenses have not been deployed and the procedural defenses below produced dismissal on grounds the appellee's own footnote concedes did not consider the controlling Supreme Court authority—what remains is not a sanctions theory. It is the recognition that nothing else worked. The motion's authority section is unusually thorough on the question of how filing restrictions are imposed, and notably silent on the question of whether they should be.

## IV. Volume Is a Function of X Corp.'s Conduct, Not Riddle's.

Each of the four emergency filings X Corp. cites was occasioned by a discrete act of post-dismissal conduct by X Corp. itself: continuing impersonation, evidence destruction, the named employee's on-platform admission corroborating the impersonation allegation pleaded below, and completed spoliation. X Corp. cannot generate the events that require documentation and then complain that the events were documented.

If the rule X Corp. proposes were generalized, it would operate as follows: a defendant commits sustained misconduct generating extensive evidence; the defendant continues the misconduct during litigation, generating additional evidence; the pro se plaintiff documents the additional evidence in additional filings; the defendant moves to restrict further filings on grounds of volume; and the court agrees, foreclosing further documentation. The misconduct continues, undocumented, unaddressed, and now insulated. This is not a hypothetical. It is the rule the motion asks this Court to adopt.

The motion's internal contradiction on this point is total. X Corp. argues that Riddle's submissions improperly rely on post-dismissal extrinsic material outside the appellate record. The motion itself is supported by an affidavit attaching post-dismissal extrinsic material outside the appellate record—the April 3, 2026 email, sent more than seven months after the district court entered judgment. The email's content references the precise subject X Corp. asks the Court to bar

Riddle from raising further: an on-platform admission by the operator of an impersonating account that the account took Riddle's copyrighted image. X Corp. introduced that material because the material helps X Corp. The same category of material from Riddle is characterized as procedurally improper because it does not. This is not the application of a procedural rule. It is the demonstration that no rule is being applied at all—only a preference for which side's post-dismissal evidence reaches the Court. Riddle observes, without objection to the inclusion, that the present motion is the first filing in this appeal in which X Corp. has placed sworn factual material before this Court regarding post-dismissal conduct. He observes only that its inclusion concedes the procedural premise X Corp. now asks the Court to enforce against him.

## V. The Motion Seeks Sanctions for Manifestations of a Recognized Disability.

Riddle is diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). ADHD is a recognized disability under the Americans with Disabilities Act, 42 U.S.C. § 12102, and the Rehabilitation Act, 29 U.S.C. § 794. Title II of the ADA applies to the access-related activities of state and federal courts. Tennessee v. Lane, 541 U.S. 509, 531 (2004). Section 504 of the Rehabilitation Act applies to all federal programs and activities, including the federal judiciary. The principle that public entities must accommodate, rather than penalize, the manifestations of recognized disabilities is settled. Olmstead v. L.C., 527 U.S. 581 (1999).

The conduct X Corp. asks this Court to sanction is, in substantial part, the manifestation of that disability. Riddle's

communications—including the email correspondence the motion characterizes as abusive—are produced through voice-to-text dictation rather than conventional written drafting, a method that preserves the cadence and emotional register of speech. His filings are voluminous because exhaustive documentation across multiple parallel issues is a documented cognitive characteristic of ADHD. His response to perceived ongoing harm is rapid filing rather than measured silence, which is also a documented characteristic. His emotional directness in correspondence with opposing counsel reflects a reduced capacity for the inhibition-mediated diplomatic register that represented parties produce through counsel. None of these features are the choice of an attorney managing a client. They are the cognitive signature of a pro se litigant operating without the buffer of representation, and they correspond directly to the diagnostic criteria for the disability.

X Corp.'s motion is built around those features. Volume, tone, emotional register, and rapid filing cadence are the entirety of its evidentiary base. The motion does not identify a single substantive legal defect in any filing. It identifies how the filings sound. It asks the Court to impose sanctions on that basis.

A federal court cannot impose sanctions whose entire basis is conduct constituting the manifestation of a recognized disability without first conducting an individualized accommodation analysis. The motion does not perform that analysis. It does not acknowledge the possibility. It treats the conduct as freestanding misconduct rather than as the protected expression of a covered disability requiring evaluation

under Lane and the Rehabilitation Act framework. The Court cannot grant the motion without itself adopting that omission.

Riddle does not, by raising this issue, claim immunity from procedural rules or from the ordinary expectations of civil litigation. He claims only what the ADA and Section 504 require: that before a federal court imposes sanctions on a pro se litigant for conduct corresponding to the manifestations of a documented disability, the court must consider whether the sanctions are imposed for the conduct or for the disability, and whether reasonable accommodation rather than restriction is the appropriate response. That analysis has not been performed. Until it is, filing restrictions on this record would be imposed in disregard of federal disability law by the federal court whose own conduct is governed by it.

## VI. Procedure Evenhandedly Applied Resolves This Motion.

Procedure is not the law. Procedure is the channel through which the law operates. The Founders did not design the federal courts to determine which party demonstrated superior procedural compliance. They designed them to find facts and apply law. This Court recently confirmed that courts "have the power and duty to find and apply the correct legal principles regardless of what the parties say." United States v. Ball, No. 25-60396 (5th Cir. Apr. 16, 2026) (Oldham, J., concurring).

The present motion asks this Court to apply procedural standards asymmetrically. Page-ordering deficiencies in Riddle's filings are

recharacterized as evidence of abuse warranting filing restrictions. X Corp.'s seven-month silence on a pending emergency motion concerning evidence destruction is treated as immaterial to the motion's premise. Tone in Riddle's correspondence is the centerpiece of an eleven-page motion. Sworn affirmative misstatements by X Corp. on the record below—including the affiliation denial contradicted by X Corp.'s own platform badge—are not addressed in the motion at all. Three documented stages of evidence destruction during the pendency of this appeal are not addressed in the motion at all. The on-platform admission by the named employee whose impersonating conduct Riddle pleaded in the operative complaint is not addressed in the motion at all.

The procedural standards the motion invokes—Baum, Farguson, Potts—require frivolousness on the merits, harassment of innocent parties, and abuse of overloaded dockets. Applied evenhandedly to this record, none of those standards is satisfied by Riddle's conduct. The litigation is not meritless: the same litigant prevailed unanimously at the Nebraska Supreme Court pro se on a related novel question, and the present claims include first-impression DMCA, Section 230, and platform-fraud theories the Fifth Circuit has not previously addressed in this posture. The harassment alleged is communication with the corporate appellee whose employee impersonated the litigant. The docket-burden alleged is documentation of conduct the appellee continues to generate.

Riddle does not ask this Court for accommodation, sympathy, or special treatment. He asks for evenhanded application of the rules the

motion itself invokes. The motion fails when judged by its own standards. This motion exists because the law applied evenhandedly to this record produces a result the appellee finds unacceptable. The remedy the motion proposes is the law's non-application. Riddle respectfully suggests that this is not a remedy the law authorizes.

## VII. The Categorical Question.

This Court is asked to consider this motion in the same week that Darrell Sheets, a public figure and longtime cast member of A&E's Storage Wars, was found dead in Lake Havasu, Arizona, of a self-inflicted gunshot. His Storage Wars castmate Rene Nezhoda has publicly attributed the death to months of sustained online harassment that preceded it. Riddle does not equate his circumstances to Sheets's, and offers the comparison only at the categorical level the present motion invites.

Sheets had no documented federal forum, no evidentiary record, and no procedural mechanism through which the platforms hosting the harassment could be compelled to engage. Riddle does. He is alive. He has built the record. He has identified the employee. He has documented the spoliation. The present motion would foreclose his ability to continue doing so. The categorical question is whether documented impersonation victims who reach federal court—who, by virtue of constitution, resources, and persistence, have done what Sheets could not—should be procedurally silenced at the request of the platforms on which the impersonation occurred. Riddle does not believe

this Court would answer that question affirmatively if asked it directly. He notes that granting the present motion is functionally that answer.

## VIII. The Structural Question Presented.

If this Court is unable or unwilling to address Riddle's pending emergency motions before adjudicating the present motion, the resulting record will present a question of first impression: whether procedural symmetry is required when adjudicating filing restrictions against a pro se litigant whose substantive emergency motions—including motions documenting evidence spoliation and corroborating the pleaded allegation that the represented party's employee is the operator of accounts engaged in the underlying tortious conduct—remain unaddressed on the same docket.

Riddle does not raise the question to threaten further proceedings. He raises it because honest description of the docket leaves no other framing available. The Supreme Court has addressed access to courts in Bounds v. Smith, 430 U.S. 817 (1977), and Christopher v. Harbury, 536 U.S. 403 (2002); pro se solicitude in Haines v. Kerner, 404 U.S. 519 (1972), and Erickson v. Pardus, 551 U.S. 89 (2007); and procedural due process in Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), and Mathews v. Eldridge, 424 U.S. 319 (1976). What no Supreme Court case has squarely addressed is the combination presented here: differential adjudication of procedural motions, where engagement of one side's procedural request requires bypassing the other side's pending substantive emergencies.

This Court need not reach that question. It can deny the present motion, address the unaddressed emergencies in the ordinary course, and leave the structural question to a different case in a different posture. That is the cleanest course and the one Riddle requests. He notes the question only to be honest about what the record will look like if the motion is granted without first engaging what came before it.

## IX. The Alternative Relief Is Worse, and the Primary Relief Multiplies the Burden It Claims to Reduce.

X Corp.'s alternative request—that it be permitted to ignore Riddle's filings unless this Court orders otherwise, with no inference of concession—is a request to be relieved of the ordinary obligations of an appellee while retaining the protections of one. It would mean that allegations of evidence destruction, employee impersonation, and platform fraud could go unrebutted on the docket without procedural consequence. The Court would receive only one side's account of facts X Corp. itself is generating in real time. That is not docket management. It is selective insulation, granted on request, against a litigant whose pleaded allegation that X Corp.'s employee operates accounts impersonating him has now been corroborated by the operator's own on-platform admission.

The primary relief sought has a parallel problem. The motion's stated purpose is to reduce the burden on the Court of further filings by Riddle. The remedy proposed achieves the opposite. Under the requested filing restriction, Riddle would not be barred from communicating with the Court—he would be required to seek prior

leave of Court before each communication. Every future allegation now raised in a single filing would, under the proposed regime, generate two filings: a motion for leave, and the underlying matter the motion seeks leave to file. The Court would adjudicate both. The actual reduction in burden the Court can achieve on this docket is denial of the present motion, engagement with the unaddressed substantive matters in the ordinary course, and resolution of the appeal on its merits—which is what was supposed to happen in any event.

## CONCLUSION

X Corp. is asking this Court for an order that, on its face, would be unremarkable—simple filing-restriction motions are routinely granted against truly vexatious litigants—but that, on these facts, would mean something different. It would mean that a federal appellate court agreed to stop receiving evidence about a defendant's ongoing misconduct, at the defendant's request, four days after the defendant lost a Rule 28(j) exchange it had itself initiated, and shortly after the named X Corp. employee whose impersonating conduct Riddle pleaded in the operative complaint admitted that conduct on the platform itself. It would mean that emotional speech, by a pro se plaintiff denied counsel, expressing accurate descriptions of documented misconduct, can be used to silence the speaker on the merits.

The motion asks the Court to silence a litigant for the manner in which he has accurately described the conduct of a defendant whose employee has admitted the conduct, whose evidence has been destroyed,

and whose own affidavit attaches the post-dismissal correspondence the motion claims should not be considered. The Court is asked to grant this relief in the name of orderly administration. Riddle declines to elaborate on the obvious.

The motion should be denied. Both forms of relief should be denied. If the Court is inclined to consider any restriction, the appropriate course is to require X Corp. to identify, on the record, the specific filings it contends were frivolous on the merits, and to address the substantive allegations of employee impersonation and evidence destruction on which Riddle's recent submissions are based. To date, X Corp. has done neither. The reason it has done neither is that doing so would require engaging the substance. The present motion exists to avoid that engagement. The Court should not bless the avoidance.

Dated: April 29, 2026

*Respectfully submitted,*
/s/ Justin Riddle
Justin Riddle
Plaintiff-Appellant, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2026, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

/s/ Justin Riddle
Justin Riddle, Pro Se

## CERTIFICATE OF COMPLIANCE

This document complies with the length limits set forth in Federal Rule of Appellate Procedure 27(d)(2)(A). It complies with the typeface and type-style requirements imposed by Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in a proportionally spaced, serifed typeface using 14-point Century Schoolbook font.

/s/ Justin Riddle
Justin Riddle, Pro Se